UNITED STATES DISTRICT COURT FILED
DISTRICT OF MASSACHUSETTS CLERKS OFFICE

2005 FEB -2 P 3: 28

COY PHELPS

PETITIONER

- v -

DAVID WINN, et al

RESPONDENT(S)

CASE NO: U.S. DISTRICT COURT 05-40003-GAO
DISTRICT OF MASS.

MOTION TO
AMEND THE COMPLAINT

NONE OF THE RESPONDENTS IN THIS CASE HAVE BEEN SERVED WITH A SUMMONS OR A COPY
OF THE COMPLAINT, SO THE ABOVE PETITIONER REQUEST THIS COURTS PERMISSION TO
AMEND THE COMPLAINT TO ADD INFORMATION NOT KNOWN BEFORE AND TO ATTEMPT
TO MAKE THE COMPLAINT BETTER ORGANIZED WITHOUT CHANGING THE MERITS.

THE PETITIONER IS ADDING THE RESPONDENT J. SOKNECA AND ADDING THE
ADMINISTRATIVE REMEDY FILE NUMBERS TO THE EXHAUSTION OF ADMINISTRATIVE REMEDY
SECTION ( 281353 - CHALLENGING ALL BOP RULES, AND 217518 - CHALLENGING ALL ACTS, ACTIONS,
INACTIONS, AND OMISSIONS OF BOP EMPLOYEES )

A COPY OF THE AMENDED COMPLAINT IS ATTACHED

DATE: 1-30-05

Coy Phelps                IN PRO SE

COY PHELPS 74871-011

FMC- DEVENS

42 PATTON ROAD

P.O. BOX 879

AYER, MA     01432

# 05-40003

CASE NUMBER

FILED
IN CLERKS OFFICE          ON

UNITED STATES DISTRICT COURT    '05 FEB -2  P 3:28    IN

DISTRICT OF MASSACHUSETTS
U.S. DISTRICT COURT
DISTRICT OF MASS.

COY PHELPS

PETITIONER

- V -

# 05-40003

DAVID WINN, AND MIKE BOLLINGER, AND

JAMES DOLD, AND S. THOMPSON, AND

S. HARVEY, AND B. POTOLICCHIO, AND

J. DAVIS, AND J. FLETCHER, AND

W. BLAZON, AND H. HAAS, K. LEONARD, AND

J. SONNEGA, et. al

RESPONDENTS

FIRST AMENDED

PERSONAL INJURY AND A CIVIL RIGHTS

COMPLAINT

DATE: 1-30-2005          _Coy Phelps_          IN PRO SE

COY PHELPS  78872-011

FMC-DEVENS

P.O. BOX 879

AYER, MASSACHUSETTS

01432

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COY PHELPS | CASE NO: 05-40003-GAO |
| PETITIONER | |
| —V— | A |
| | PERSONAL INJURY |
| DAVID WINN, MIKE BELLINGER, | AND A |
| JAMES DOLD, S. THOMPSON, S. HARVEY, | CIVIL RIGHTS |
| B. POTOLICCHIO, J. FLETCHER, | COMPLAINT |
| J. DAVIS, W. BLAZON, H. HAAS, | (A BIVENS ACTION) |
| K. LEONARD, J. SONNESA, et al. | |
| RESPONDENT(S) | |

I

JURISDICTION AND AUTHORITY

THIS COURT HAS JURISDICTION TO REVIEW THIS COMPLAINT AND TO GRANT
RELIEF AND REMEDY UNDER BIVEN V SIX UNKNOWN NAMED AGENTS OF THE
FEDERAL BUREAU OF NARCOTICS, 1971, 403 US 388, 29 LEd 2d 619,
91 S. CT 1999, AND 5 USC 701-706 (JUDICIAL REVIEW OF AGENCY ACTIONS),
28 USC 1331 (FEDERAL QUESTION), 28 USC 1343 (CIVIL RIGHTS VINDICATION),
28 USC 1346 (FEDERAL TORTS), 28 USC 2201-2202 (DECLARATORY JUDGMENT),
28 USC 2674-2680 (US LIABILITY), 42 USC 233 (PUBLIC HEALTH SERVICE), AND
42 USC 1988 (COMMON LAW - ATTORNEY FEES), AND THE AMERICANS WITH
DISABILITIES ACT (42 USC 12101), RELIGIOUS FREEDOM ACT (42 USC 2000bb - 2000cc),
AND FREEDOM OF INFORMATION / PRIVACY ACT (5 USC 552a (g)(i))

## II

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

THE PETITIONER (HEREAFTER PHELPS) HAS EXHAUSTED ADMINISTRATIVE REMEDIES
28,1333 (ALL ACTIONS, ACTS, INACTIONS AND OMISSIONS) 2675IS (CHALLENGE TO RECORDS)

## III

## PARTIES

PETITIONER:

THE PETITIONER IN THIS ACTION IS COY PHELPS 78872-011 AND HAS
A MAILING ADDRESS OF FMC-DEVENS, 42 PATTON ROAD, P.O. BOX 879,
AYER, MASSACHUSETTS, 01432;

RESPONDENTS:

ALL OF THE RESPONDENTS ARE SUED IN THEIR PERSONAL AND INDIVIDUAL
CAPACITIES;

RESPONDENTS DAVID WINN, MIKE BOLLINGER, JAMES DOLD, S. HARLEY, K. LEONARD,
J. FLETCHER, B. PETRICCHIO, J. DAVIS, W BLAZIN, AND J. SCHNEGA ARE EMPLOYED AT
THE U.S. BUREAU OF PRISONS AND WORK AT THE FEDERAL MEDICAL CENTER (FMC)
AT DEVENS, MASSACHUSETTS AND HAVE A BUSINESS MAILING ADDRESS OF 42
PATTON ROAD, P.O. BOX 880, AYER, MASSACHUSETTS, 01432.

RESPONDENT S. THOMPSON IS EMPLOYED BY THE U.S. PUBLIC HEALTH SERVICE
AND ASSIGNED TO DUTY IN THE U.S. BUREAU OF PRISONS AND WORKS AT FMC—
DEVENS AND HAS A MAILING ADDRESS OF 42 PATTON ROAD, P.O. BOX 880,
AYER, MASSACHUSETTS, 01432

IV

## STATEMENT OF THE ISSUES

1. IS PHELPS LAWFULLY UNDER THE JURISDICTION OF 18 USC 4243?

2. DID THE U.S. ATTORNEY GENERAL MISAPPLY THE FEDERAL MENTAL HEALTH LAWS?

3. DOES THE U.S. BUREAU OF PRISONS HAVE LAWFUL CUSTODY OF PHELPS OR ANY OTHER INMATE COMMITTED UNDER 18 USC 4243 (INSANITY ACQUITTED) OR 18 USC 4246 (OTHER CIVIL COMMITMENTS)?

4. DID THE U.S. ATTORNEY GENERAL VIOLATE SUBSECTION (i) OF 18 USC 4247 BY PLACING PHELPS IN FEDERAL CONFINEMENT INSTEAD OF STATE, LOCAL, OR PRIVATE CONFINEMENT?

5. DID THE EMPLOYEES AND MEMBERS OF THE U.S. BUREAU OF PRISONS ACT IN CLEAR ABSENCE OF ALL LAWFUL JURISDICTION AND AUTHORITY?

6. CAN A UNCONVICTED CIVIL MENTAL PATIENT (PHELPS) **LAWFULLY** SUFFER THE SAME ENVIRONMENT, ATMOSPHERE, CONDITIONS, DISCIPLINES, PUNISHMENTS, CARE, AND TREATMENT AS CONVICTED AND SENTENCED CRIMINAL PRISONERS WITHOUT VIOLATING FEDERAL LAW, THE U.S. CONSTITUTION, AND U.S v JONES, 1983, 463 US 354?

7. ARE THE EMPLOYEES OF THE U.S. PUBLIC HEALTH SERVICE, OR THE EMPLOYEES OF THE U.S. BUREAU OF PRISONS RESPONSIBLE FOR THE DAY-TO-DAY DIRECT CARE AND TREATMENT OF CIVIL INMATES COMMITTED UNDER 18 USC 4243 OR 18 USC 4246 (SEE ALSO 18 USC 4042, 18 USC 4247(i), AND 28 CFR C 95-0.96)?

8. HAVE THE RESPONDENTS COMPLIED WITH THE TERMS OF 18 USC 4243 AND 18 USC 4247(a) AND (i)?

9. CAN U.S. BUREAU OF PRISON RULES AND REGULATIONS ESTABLISHED FOR CONVICTED PRISONERS BE LAWFULLY APPLIED TO UNCONVICTED CIVIL MENTAL PATIENTS?

10. DID THE B.O.P. STAFF, EMPLOYEES, AND MEMBERS DEPRIVE, DENY, AND USURPE THE CONSTITUTIONAL, STATUTORY, CIVIL, AND COMMON LAW GUARANTEED, FREEDOMS, LIBERTIES, RIGHTS, PRIVILEGES, IMMUNITIES, PROTECTIONS, AND SAFEGUARDS OF PHELPS?

11. HAVE THE BOP STAFF USED PROFESSIONAL JUDGMENT AS REQUIRED BY YOUNGBERG v ROMEO, 1982, 457 US 307?

3

12. DID PHELPS SUFFER IRREPARABLE PHYSICAL, MENTAL, EMOTIONAL, SPIRITUAL, AND LEGAL LOSS, HARM, INJURY, ANGUISH, PAIN, AND SUFFERING BECAUSE OF THE ACTS, ACTIONS, INACTIONS, AND OMISSIONS OF THE U.S. ATTORNEY GENERAL AND THE BOP STAFF AND EMPLOYEES?

## V

## BACKGROUND

DURING THE CULTURAL, SOCIAL, AND RACIAL UPHEAVEL AND REVOLUTION OF THE 1960's, 1970's, AND 1980's, PHELPS WAS CONVERTED TO THE NAZI RELIGION AND INCORPORATED A CHURCH IN THE STATE OF CALIFORNIA AND BEGAN TEACHING THE TENETS AND BELIEFS OF HIS RELIGION AS PRESENTED IN THE SCRIPTURES OF THE CHRISTIAN HOLY BIBLE. HE PROSELYTIZED RACIAL PURITY AND RACIAL SEGREGATION AS WELL AS WHITE SUPREMACY AS THE FUNDAMENTAL COMMANDMENTS OF GOD. HE IDENTIFIED (AS DID JESUS) THE JEWS AS BEING DEVILS FROM HELL AND ALL NON WHITES AS BEING THE RESULTS OF MIXBREEDING OF SATAN WITH THE MONKEY KINGDOM AND EVOLUTIONIZING BY GEOGRAPHIC ADAPTATION. HE RECEIVED HUNDREDS OF DEATH THREATS FROM JEWS AND OTHERS AND SUFFERED ASSAULTS AND PROPERTY LOSS, BECAUSE OF HIS SINCERELY HELD SHARED RELIGIOUS BELIEFS.

IN 1983 PHELPS WAS ARRESTED ON CHARGES OF BOMBING JEW SYNAGOGUES, THE HOMES OF JEW RABBIS, AND SCHOOLS THAT TAUGHT BLACK SUPREMACY.

PHELPS CLAIMED TO BE INNOCENT AND THAT HE WAS BEING FRAMED IN A INTERNATIONAL JEW CONSPIRACY. EVERYONE BELIEVED THIS TO BE A DELUSION THAT QUALIFIED PHELPS FOR A INSANITY PLEA.

IN JUNE OF 1986 PHELPS WAS FOUND NOT GUILTY BY REASON OF INSANITY (NGRI)

AND WAS COMMITTED TO THE CUSTODY OF THE U.S. ATTORNEY GENERAL PURSUANT

TO 18 USC 4243(e) WHO, IN TURN, PLACED PHELPS IN THE CUSTODY OF THE

DIRECTOR OF THE U.S. BUREAU OF PRISONS WHO, IN TURN, DELEGATED HIS AUTHORITY

TO VARIOUS WARDENS OF VARIOUS PRISONS IN THE FEDERAL SYSTEM.

PHELPS WAS UNSHAKEN IN HIS INTERNATIONAL CONSPIRACY CLAIM AND THIS

"DELUSION" KEPT HIM INCARCERATED.

THEN, SEVEN YEARS AFTER HIS INCARCERATION BEGAN, THE DISTRICT ATTORNEY

OF SAN FRANCISCO, CALIFORNIA RAIDED THE OFFICES OF A JEW ORGANIZATION

(ANTI-DEFAMATION LEAGUE OF B'NAI B'RITH) AND SEIZED ALL RECORDS AND DOCUMENTS.

IN THE SEIZED RECORDS WAS A DOSSIER ON PHELPS THAT SHOWED PHELPS

WAS ACTUALLY INNOCENT OF THE CRIMES AND THAT HIS CLAIM OF BEING

FRAMED IN A INTERNATIONAL CONSPIRACY WAS ACTUALLY TRUE AND WAS NEVER

A DELUSION AT ALL.

THE DISTRICT ATTORNEY NOTIFIED THE DEPARTMENT OF JUSTICE (DOJ) AND THE

U.S. BUREAU OF PRISONS OF THE DISCOVERED EVIDENCE.

NEITHER THE DOJ OR THE BOP MADE ANY EFFORT TO EFFECT THE RELEASE OF

PHELPS BECAUSE THEY CONSIDERED THE RELIGIOUS TEACHINGS OF PHELPS TO BE

POLITICALLY INCORRECT AND DANGEROUS.

PHELPS MADE REPEATED ATTEMPTS TO FIND RELIEF FROM THE COURTS, BUT

EVERY TIME THE COURT WAS READY TO RULE ON THE ISSUE, THE BOP WOULD

TRANSFER PHELPS TO ANOTHER JUDICIAL CIRCUIT AND THEN RUSH INTO

COURT WITH A MOTION TO DISMISS ON THE GROUNDS OF MOOTNESS. AFTER THE

THIRD TIME, THE 8TH CIRCUIT SAID "WE NOTE THAT PHELPS HAS BEEN TRANSFERRED

TWICE BEFORE TO MOOT THIS ISSUE. WE HOPE THIS IS NOT A PATTERN." (PHELPS

V. US FEDERAL GOVERNMENT, 8C1994, 15 F3d 735.) TIME HAS MADE NO CHANGE.

PHELPS HAS BEEN TRANSFERRED REPEATEDLY TO MOOT THE ISSUE OF FALSE IMPRISONMENT (ACTUAL INNOCENCE) AND THE 3rd CIRCUIT NOTED IT IN A PUBLISHED OPINION. IN ADDITION A BOP PSYCHIATRIST (DR. STERN 2004) AND A BOP PSYCHOLOGIST (DR. MARK HAZELWOOD) REPORTED TO THE COURT THAT THEY HAD SEEN (AND VERIFIED) THE EVIDENCE THAT PHELPS WAS ACTUALLY INNOCENT AND HAD HAVE BEEN MAKING HE CLEAR THE ONE THAT MUST BE LAWFULLY RELEASED. IN 2004, PHELPS WAS TRANSFERRED TO FMC-DEVENS WHERE HE IS TODAY.

# FACTS

1. PHELPS IS NOT UNDER THE JURISDICTION OF 18 USC 4243;

    (A) THE STATUTE REQUIRES A CRIME — A VIOLATION OF A CRIMINAL LAW;

        (1) THE GOVERNMENT HAS ALREADY ADMITTED (IN OPEN COURT) THAT PHELPS

            (A) DID NOT COMMIT A CRIME,

            (B) DID NOT VIOLATE ANY LAW,

            (C) DID NOT VIOLATE ANY KIND OF PROBATION OR RELEASE CONDITION,

            (D) DID NOT VIOLATE ANY KIND OF COURT ORDER,

            (E) DID NOT CONSPIRE WITH ANYONE TO COMMIT A CRIME,

            (F) DID NOT ASSOCIATE WITH ANYONE ENGAGED IN CRIMINAL ACTIVITY.

    (B) THE GOVERNMENT KNOWS THAT PHELPS CANNOT LAWFULLY BE SUBJECTED TO 4243

    (C) 18 USC 4001(a) STATES THAT NO CITIZEN WILL BE DETAINED, OR IMPRISONED, UNLESS

        HE HAS VIOLATED A LAW,

        (SINCE 4243 REQUIRES A CRIME AND PHELPS DID NOT COMMIT A CRIME, HE IS NOT

        UNDER THE JURISDICTION OF THE STATUTE AND THE PROVISIONS AND TERMS OF

        THE STATUTE DOES NOT APPLY TO HIM )

    (D) THE STATUTE MAKES THE U.S ATTORNEY GENERAL THE ONE RESPONSIBLE TO OVERSEE

        THE OPERATION OF THE PROVISIONS OF THE STATUTE;

**1.** THE FEDERAL GOVERNMENT DOES NOT HAVE A FEDERAL CIVIL HOSPITAL IN WHICH TO CONFINE FEDERAL INSANITY ACQUITTEES, AS THE STATUTE REQUIRES, BUT IT DESPERATELY NEEDS ONE (FOUCHA V LOUISIANA, 1992, 504 US 71; MAGINISTA V GREENE, WDMO 1969, 305 FSupp 175; JONES V HARRIS, SC1969, 339 F2d 555) SEE DAVIS V REAFORD 1C2003, 264 B3 86 AT 110

    (A) THE COURTS HAVE CONTINUOUSLY HELD THAT THE FEDERAL MEDICAL CENTERS IN THE U.S. BUREAU OF PRISON SYSTEM ARE PRISONS, NOT HOSPITALS, AND THOSE CONFINED THEREIN SUFFER INCARCERATION, NOT HOSPITALIZATION (WILLIAMS V RICHARDSON, SC1973, 481 F2d 358, US V HINCKLEY, DOC 1981, 725 FSupp 616) REGARDLESS OF THE LABEL (VAN SIRES V GREENE, SC1971, 437 F2d 334) BECAUSE, REGARDLESS OF THE NAME (MEDICAL CENTER) IT OPERATES, FUNCTIONS, AND IS ADMINISTERED AS A PRISON BY BOP STAFF TRAINED IN PENOLOGY (RAWLES V US SC1964, 331 F2d 21) WHEN A FACILITY LOCKS PEOPLE IN CELLS, RESTRICT PRIVILEGES, DISCIPLINE AND PUNISH PEOPLE FOR INFRACTION OF RIGIDLY ENFORCED RULES, REQUIRES OBEDIENCE AND SUBMISSION TO AUTHORITY, AND CONDUCTS ACTIVITIES BEHIND WALLS OR HIGH SECURITY FENCES, THEN THE FACILITY IS A PRISON - NOT A HOSPITAL (COVINGTON V HARRIS, DCApp 1969, 419 F2d 617), IF THE FACILITY IS ADMINISTERED BY THE U.S. ATTORNEY GENERAL AND NOT THE SECRETARY OF THE DHHS, THEN IT IS A PRISON - NOT A HOSPITAL (FROST V GREENE, WDMO 1970, 315 FSupp 899)

    (B) EVEN IF THE FEDERAL GOVERNMENT CONSTRUCTED A PHYSICAL BUILDING AND PUT A SIGN ON IT READING "CIVIL HOSPITAL," THE GOVERNMENT STILL COULD NOT CONFINE PHELPS IN IT, BECAUSE THERE ARE NO PROVISIONS IN THE LAWS THAT ALLOWS FOR FEDERAL CONFINEMENT.

        (i) FIRST, CONGRESS MUST MODIFY THE STATUTE TO INCLUDE FEDERAL CONFINEMENT, THEN IT MUST CONSTRUCT A PHYSICAL CIVIL HOSPITAL, AND THEN STAFF IT WITH NON-BUREAU OF PRISON EMPLOYEES - TO MEET THE REQUIREMENTS OF 18 USC 4243, 4247, AND SUPREME COURT LAW.

2. THE U.S. ATTORNEY GENERAL ABUSED HIS DISCRETION, MADE CLEARLY ERRONEOUS INTERPRETATIONS AND CONCLUSIONS OF LAW AND FACT, AND MISAPPLIED THE FEDERAL MENTAL HEALTH LAWS!

    (A) UNDER SUBSECTION (e) OF 18 USC 4243, THE ATTORNEY GENERAL HAS ONLY 3 OPTIONS:

        (1) RELEASE THE INSANITY ACQUITTEE TO THE COMMUNITY UNCONDITIONALLY

        (2) CAUSE AN APPROPRIATE STATE OFFICIAL TO ASSUME RESPONSIBILITY OF THE ACQUITTEE

            (A) UNDER 18 USC 4247(i) THE ATTORNEY GENERAL MAY PETITION A STATE COURT FOR A STATE CIVIL COMMITMENT INTO A STATE MENTAL HOSPITAL PURSUANT TO STATE LAWS

        (3) CONFINE ("HOSPITALIZE") THE INSANITY ACQUITTEE TO A "SUITABLE" FACILITY DEPENDING UPON THE INDIVIDUAL CHARACTER OF THE PERSON AND THE NATURE OF THE CRIME (18 USC 4247(c))

    (B) IF THE ATTORNEY GENERAL CHOOSES TO "HOSPITALIZE" THE ACQUITTEE, HE MUST —

        (1) PUT PHELPS IN THE CUSTODY OF THE SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS)

            (A) IT IS THE SECRETARY WHO IMPLEMENTS THE PROVISIONS OF THE FEDERAL MENTAL HEALTH LAWS (18 USC 4247(i)(D))

            (B) THE ATTORNEY GENERAL MISAPPLIED THE LAW AND PUT PHELPS IN THE CUSTODY OF THE DIRECTOR OF THE U.S. BUREAU OF PRISONS AS IF PHELPS WAS A CONVICTED PRISONER WHO HAD BEEN FOUND GUILTY AND SENTENCED TO A TERM OF PUNISHMENT

        (2) HE MUST MAKE SURE THE FACILITY HAS BEEN APPROVED AND CERTIFIED BY THE SECRETARY OF THE DHHS AS BEING A HOSPITAL;

            (A) THE SECRETARY HAS NEVER APPROVED ANY B.O.P. FACILITY. WHY? BECAUSE IT WOULD BE UNLAWFUL. ALL THE BOP FACILITIES ARE CONSTRUCTED UNDER PUBLIC LAW AS PRISONS AND ARE ACCREDITED AS PRISONS. THEY CANT BE BOTH HOSPITALS AND PRISONS AND OPERATE ONLY AS A PRISON.

(3) HE MUST MAKE SURE THE FACILITY HAS A REHABILITATION PROGRAM THAT MEETS THE STANDARDS OF 18 USC 4247(a) AND WHICH HAS BEEN APPROVED BY THE SECRETARY OF THE DHHS (18 USC 4247(i)(c))

  (A) NONE OF THE BOP FACILITIES MEET THE REHABILITATION STANDARDS AND NO REHABILITATION PROGRAM HAS EVER BEEN APPROVED BY THE SECRETARY OF THE DHHS

(C) IF THE STATE COURT WILL NOT COMMIT THE ACQUITTEE TO A STATE MENTAL HOSPITAL PURSUANT TO STATE LAWS, THEN THE ATTORNEY GENERAL HAS ONLY 3 OTHER OPTIONS IF HE STILL CHOOSES TO "HOSPITALIZE" THE ACQUITTEE. HE CAN —

  (1) ENTER INTO A CONTRACT WITH A STATE (OR POLITICAL SUB-DIVISION)

    (A) NOTE THAT THE ATTORNEY GENERAL CAN STILL HOSPITALIZE PHELPS IN A STATE MENTAL HOSPITAL BY CONTRACT - BUT NOW HE IS PAYING THE BILLS

  (2) ENTER INTO A CONTRACT WITH A LOCALITY, OR

  (3) ENTER INTO A CONTRACT WITH A PRIVATE AGENCY

    (18 USC 4247(i)(3))    THESE ARE HIS ONLY OPTIONS

THERE ARE NO OPTIONS - NO PROVISION - FOR FEDERAL CONFINEMENT

4. THE U.S. BUREAU OF PRISONS DOES NOT HAVE LAWFUL CUSTODY OF PHELPS:

  (A) THERE ARE NO PROVISIONS IN 18 USC 4243 OR 18 USC 4247 FOR FEDERAL CONFINEMENT

  (B) THE U.S. ATTORNEY GENERAL IS REQUIRED TO PUT PHELPS IN THE CUSTODY OF THE SECRETARY OF THE DHHS - NOT THE U.S. BUREAU OF PRISONS

  (C) UNDER 18 USC 4042 (AND 28 CFR 0.95 - 0.96) THE B O P. ONLY HAS AUTHORITY OVER PENAL AND CORRECTIONAL INSTITUTIONS (NOT HOSPITALS)

    (1) 18 USC 4243 REQUIRES PHELPS TO BE "HOSPITALIZED."

(D) 18 USC 4042 (AND 28 CFR 0.95 - 0.96) GIVES THE BUREAU OF PRISONS AUTHORITY ONLY OVER THOSE CHARGED WITH CRIMES AND THOSE CONVICTED OF CRIMES (NOT CIVIL COMMITMENTS / INSANITY ACQUITTEES);

    (1) THERE ARE NO PROVISIONS IN THE FEDERAL MENTAL HEALTH LAWS THAT ALLOWS OR AUTHORIZES FEDERAL CONFINEMENT FOR INSANITY ACQUITTEES;

        (A) NO FEDERAL AGENCY CAN ENACT A RULE OR REGULATION GIVING ITSELF THAT AUTHORITY;

        (B) EVEN CONGRESS CANNOT MAKE A FEDERAL REGULATION WITHOUT A STATUTE AUTHORIZING THAT REGULATION; ✱

        (C) THE BUREAU OF PRISONS HAS SEVERAL RULES AND REGULATIONS ESTABLISHED WITHOUT STATUTORY AUTHORITY;

            (i) SOME CURRENT RULES AND REGULATIONS WERE ESTABLISHED ON STATUTORY AUTHORITY WHICH HAS BEEN REPEALED OR ABROGATED;

        (D) 28 CFR 551.101(a)(1) AND BUREAU OF PRISON POLICE 7331.04 ALLOWING A CIVIL COMMITMENT / INSANITY ACQUITTEE TO BE TREATED AS A CONVICTED AND SENTENCED PRISONER VIOLATES THE SCHEME AND INTENT OF 18 USC 4243 AND 4246 AND VIOLATES U.S. v JONES, 1983, 463 US 354 at 368 (INSANITY ACQUITTEES CANNOT BE TREATED AS CONVICTED PRISONERS) SEE U.S. v SAHM TC 1999, 174 F3d 872 (PRINCIPLES OF CRIMINAL SENTENCING DO NOT APPLY TO INSANITY ACQUITTEES)

---

✱ EVEN THE COURTS CANNOT ACT WITHOUT STATUTORY AUTHORITY (US v SOTELE TC 1416, 94 F3d 1037 AT 1040)

5. ALL OF THE STAFF, EMPLOYEES, PERSONNEL, AND MEMBERS (FULL TIME, PART TIME, CONSULTS, VOLUNTEERS, AND CONTRACTED WORKERS) OF THE U.S. BUREAU OF PRISONS ARE IN CLEAR ABSENCE OF ALL LAWFUL JURISDICTION AND AUTHORITY IN THE CUSTODY, CONFINEMENT, CARE, AND TREATMENT OF (AND PROVIDING SERVICES FOR) INSANITY ACQUITTEES AND OTHER CIVIL COMMITMENTS (18 USC 4243 AND 18 USC 4246)

(A) THERE ARE NO PROVISIONS IN THE FEDERAL MENTAL HEALTH LAWS ALLOWING, OR AUTHORIZING, FEDERAL CONFINEMENT:

(i) WHEN A STATUTE IS SILENT ON A ISSUE, OR HAS NO PROVISION, THERE IS A CORRESPONDING LACK OF AUTHORITY (KEENE v US, 1993, 508 US 200, BFP v RESOLUTIONS, 1994, 511 US 531)

(A) SINCE 18 USC 4243 AND 18 USC 4247 DOES NOT AUTHORIZE THE B.O.P. TO HAVE CUSTODY OF PHELPS, THE EMPLOYEES OF THE B.O.P. HAVE NO LAWFUL AUTHORITY OVER PHELPS. THEY CANNOT DO ANYTHING TO PHELPS OR FOR PHELPS WITHOUT VIOLATING HIS RIGHTS

(B) THE BOP MEMBERS KNOW (AND UNDERSTAND) THE LEGAL DIFFERENCE BETWEEN A CIVIL COMMITMENT AND A CRIMINAL SENTENCE, AND THE LEGAL DIFFERENCE BETWEEN A UNCONVICTED CIVIL PATIENT AND A CONVICTED CRIMINAL PRISONER BUT REFUSE TO TREAT THEM DIFFERENTLY

(i) THE BOP TREATS A UNCONVICTED CIVIL PATIENT AS A CONVICTED AND SENTENCED PRISONER BY RULES AND REGULATIONS, BUT IN CUSTOM AND PRACTICE, THE UNCONVICTED CIVIL MENTAL PATIENT IS TREATED FAR WORSE THAN SENTENCED PRISONERS AND WITH GREATER DISPARITY AND INTOLERANCE.

(A) EACH TIME A GROUP OF PEOPLE VISITS THE FACILITIES TO INVESTIGATE COMPLAINTS AND CONDITIONS, THE MENTAL HEALTH UNITS AND PATIENTS ARE AVOIDED

(i) ON OCCASIONS WHEN A MENTAL PATIENT DOES COMPLAIN, HE IS PUNISHED FOR COMPLAINING (CORRECTIVE THERAPY)

11

6. THE COURTS ADMIT TO A DISTINCTION BETWEEN CIVIL COMMITMENTS AND CRIMINAL SENTENCES, AND BETWEEN UNCONVICTED AND CONVICTED, AND BETWEEN A UNCONVICTED CIVIL PATIENT AND A CONVICTED CRIMINAL PRISONER:

(A) PAGE V TOLLEY, 9C 2000, ACL FSd 1186 AT 1190 (PRISONER LITIGATION REFORM ACT DOES NOT APPLY TO CIVIL COMMITMENTS) KING V GREENBLATT, DMASS 1999, 53 FSupp 2d 117 at 138 (SAME)

(B) GRAVIS V KELLER, DDC 1955, 66 7 FSupp 1186 (NO COURT HAS EVER HELD THAT A CIVIL COMMITMENT IS THE SAME AS A CRIMINAL SENTENCE OR THAT HOSPITALIZATION WAS THE SAME AS INCARCERATION) ALBRIGHT V OLIVER, IC 1994, 975 F2d 543 (SAME)

(C) ECKL V HYLAND, DNJ 1976, 411 FSupp 705 (THE BASIS FOR INCARCERATION IS TO PUNISH THE GUILTY - THE BASIS FOR A CIVIL COMMITMENT IS TO TREAT THE ILL)

(D) US V JAIN, IC 1999, 174 F3d 892 (THE PRINCIPLES OF CRIMINAL SENTENCING DOES NOT APPLY TO INSANITY ACQUITTEES)

(E) US V JONES, 1983, 463 US 354 (INSANITY ACQUITTEES CANNOT BE TREATED AS CONVICTED PRISONERS)

(F) JENNINGS V NYS MEDICAL HEALTH, SDNY 1992, 786 FSupp 376 (CRIMINAL CONFINEMENT IS NOT THE SAME AS A CIVIL COMMITMENT) WARREN V HARVEY, DConn 1979, 472 FSupp 1061 (SAME)

(G) SCHALL V MARTIN, 1986, 467 US 253 (CONFINING THE MENTALLY ILL IN A PENAL ENVIRONMENT IS IMPERMISSIBLE) BURGETON V TUCKER, 1966, 364 US 479 (SAME); FRENCH V BLACKBURN, MDNC 1977, 428 FSupp 1351 (SAME); LYNCH V BAXLEY, MDAla 1983, 336 FSupp 378 AFF 651 F2d 587, 744 F2d 1455 (SAME); CAMERON V TOMES, DMASS 1992, 783 FSupp 1511 (SAME); DAVIS V BALSON, DOhio 1978, 461 FSupp 842, PENHURST V HALDERMAN, 1954, 451 US 1 (SAME)

YET THE COURTS (IN THIS CASE) HAVE TREATED PHELPS EQUAL TO, OR WORSE THAN, CONVICTED PRISONERS UNDER A SENTENCE OF CRIMINAL PUNISHMENT

(A) THE COURT SENT PHELPS TO PRISON INSTEAD OF SENDING HIM TO A HOSPITAL AS REQUIRED BY LAW

(B) THE COURT PUT PHELPS ON CRIMINAL PROBATION CONDITIONS INSTEAD OF PSYCHIATRIC CONDITIONS

(C) THE COURT HAD PHELPS SUPERVISED BY A CRIMINAL PROBATION OFFICER WHO WAS UNQUALIFIED BY HAVING NO KNOWLEDGE, SKILLS OR EXPERIENCE IN MENTAL HEALTH

(D) HAD PHELPS ARRESTED ON A BENCH WARRANT SIMPLY BECAUSE SHE DISAGREED WITH THE BEHAVIOR OF PHELPS

E) 18 USC 3603[8](A) IS UNCONSTITUTIONAL BECAUSE IT CONFLICTS WITH THE FEDERAL MENTAL HEALTH LAWS (SEE US V MCGUIRE, CIT88, 851 F2d 529) AND IT CONFLICTS WITH THE SCIENCE AND INTENT OF THE MENTAL HEALTH LAWS (SEE US V ABYSINNER, CIT55, 761 F2d 857)

7. 18 USC 4081 AND 18 USC 4247(C) REQUIRES "INDIVIDUALIZED" CARE AND TREATMENT ACCORDING TO THE CHARACTER OF THE INDIVIDUAL. THE BEP HAS A POLICY OF TREATING ALL MENTAL PATIENTS ALIKE. (IN 20 YEARS OF INCARCERATION PLAINTIFF HAS NEVER HAD "INDIVIDUALIZED CARE AND TREATMENT. 42 USC 10841 IS THE MENTAL PATIENTS BILL OF RIGHTS

SEE WELSCH V HAYNE, DMN 1972, 491 F2d 352 (INDIVIDUALIZED TREATMENT REQUIRED) BATON V PA COMMISSIONERS, CC1987, 818 F 2d 1646 (SAME), CANTERBURY V WILSON, 1982, 546 F 5pp 174 (EXTREME CONTROL THERAPY PROHIBITED), SCOTT V PLANTE, D KANSAS, 130 F 5pp 542 (MUST BE INDIVIDUALIZED IN THE LEAST PUNITIVE AND LEAST RESTRICTIVE SETTING) THE BEP IS THE OPPOSITE. THEY PUT MENTAL PATIENTS IN THE MOST RESTRICTIVE SETTING -AUTOMATICALLY. SEE ALSO WYATT V ALDERHOLT, SC1974 503 F2d 1305, WYATT V STICKNEY, M ALA 1972, 344 F5pp 373, 344 F5pp 387, 344 F5pp 1341, US V FAUCETT, , 491 F2d 352, YOUNGBERG V ROMEO AT 359 U 25( DIFFERENT PATIENTS HAVE DIFFERENT LIBERTY INTERESTS AND REQUIRE DIFFERENT LEVELS OF TREATMENT) SEE RENNIE V KLEIN, NJ78 462 F 5pp 1131, 476 F 5pp 1264, 653 F2d 836, TROP V DULLES, 1958, 366 US 86 (LABELING SOMETHING A "TREATMENT" DOES NOT IPSI FACTO MAKE IT A TREATMENT AND NOT A PUNISHMENT) "CORRECTIVE THERAPY" FOR THE MENTALLY ILL IN THE BEP, IS THE SAME AS DISCIPLINARY SEGREGATION. CURRENT BEP POLICIES. SEE LANDMAN V ROYSTER, , 1971, 333 F 5pp 621, 354 F 5pp 1292, 354 F 5pp 1302, MORALY U ET U IN N Y US, 1976, 427 US 215 (TREATMENT CANNOT BE HARSH OR OPPRESSIVE)

8. THE BEP EMPLOYEES VIOLATE THE "ALL-WATCH" PRINCIPLES OF 18 USC 4248(P). THE BEP MUST MAKE "ALL" REASONABLE EFFORTS TO CAUSE THE STATE TO ASSUME RESPONSIBILITY. THE BEP MAKES ONE ATTEMPT PER YEAR. "WHEN" THE PATIENT IS NO LONGER MENTALLY ILL, THE DIRECTOR MUST IMMEDIATELY NOTIFY THE COURTS. THE BEP WAITS UNTIL THE ANNUAL REPORT IS DUE

9. Even though the insanity acquitee has been given absolution for his crimes, the BOP always (no matter how many years pass) use the crime to keep a person incarcerated, that violates double jeopardy, res judicata, and collateral estoppel, it creates the irrebuttable presumption the person will never be released (Levine v Torvik, W.1993, 986 P2d(506) see Schweiker v Hansen, 1968, 415 Fld 617 (where once a time when the crime must be put aside when determining a release) Millard v Harris, 1968, 406 F2d843 (the greater the distance in time between the crime and the evaluation, the less the crime can be used.) Cleveland v Demetrovich, R, 234 SCad 117, 413 Fld 503, 422 US 563 (25 years confinement) each time persons is interviewed, the crime is at issue even though the government admits persons did not commit a crime.

10. The doctors do not use the "clear & convincing" approach to making a diagnosis (see US v Rogerski, 4C1994, 25 F3d 419) but rely entirely upon "the record" (diagnosis made by previous doctors in years past)

   (A) When persons arrived at FMC-Devens, the doctors diagnosed persons as "Paranoid Schizophrenic", the merely rubber stamped the diagnosis of the 1985 trial doctors from the record, that is plain error because the trial doctors made a diagnosis on persons claim of being framed in a international terror conspiracy, but in 1992 that claim was found to be true — so the trial doctors diagnosis was nullified, yet BOP doctors always rubber stamp that diagnosis without making any independent evaluation without the record

11. The BOP staff flagrantly violate their own rules that harms mental patients, see Petition of State Police, 1985, 489 N2d 103 (employees must follow agency rules) Wilford v US, 1991, 598 N2d 225 (department bound by rules of agency) Carlson v US, 1991, 115 L.Ed2d 335, 835 Fld 1289

Policy statement 6606 et Seq Determines the care and treatment of mental patients and 28 CFR 541 Determines discipline of convicted prisoners. The BOP punishes civil patients as convicted prisoners are punished without any regard to their mental status (see Landman v Royster, 1971, 333 FSupp 621, 354 FSupp 1292, 354 FSupp 1302 (Rules must be those of a mental hospital not a prison) Nyce v Ciccone, WDMo 1969, 244 FSupp 654 (same)

The employees of the BOP violate the rules governing Federal employees conduct and Responsibilities (BOP Policy 3406.03 and 3610.06)

(A) For example all employees must display name identification tags on their clothing and must reveal their names to inmates upon request.

(1) Employees do not wear name plates but when they do, they conceal it so inmates cannot see the name

(a) Employees either refuse to disclose their names or only reply to last name (i.e. refuse or reply thing else, i.e. i doct if inmate complains to the desk about officer "Smith" when there are 6 "Smiths" and won't even reveal a first name or initial".)

(B) Employees are prohibited from abusing or disrespecting inmates (especially the mentally ill) but employees disregard the Federal employees conduct rules.

(1) Employees abuse the mentally ill frequently because the mentally ill never complain. They are so ill they don't know their rights are being violated or they think they must have done something to deserve the abuse but don't know why. Employees make themselves of this condition to vent their own frustrations. When patients do complain, the complaint is viewed as a product of the mental illness rather than a legitimate complaint.

There is no advocate for the mentally ill as required by 42 USC 10841

42 USC 10843

(C) The employees do not exercise professional judgment (Shaw v Stalk House, 1970, 426 F2d 1155, Hoffman v Romero, 1981, 457 US 307)

The BOP staff are not trained in the care and treatment of the mentally ill. They are trained only in punishment and any mental health skills or concerns are frowned upon by the B.O.P. Officers, doctors, nurses, never interact with mental patients except at a fixed scheduled appointment. The staff lock themselves in the office, play cards, watch TV on the internet, play video games, socialize, etc. but refuse to interact with inmates - never interact with inmates - it is a BOP policy.

- They seize property of inmates without giving a receipt (in violation of rules)
- They make up their own rules on a whim or on their current moods
- They view mental patients as sub-species and communicate that attitude
- They make false reports and accusations against inmates
- They intimidate, coerce, and threaten mental patients
- They retaliate against mental patients with vindictiveness (at the approval of supervisory staff)
- They exert absolute control and demand instant obedience and submission of all mental patients. No patient can express individualism or autonomy.
- There are no diversion activities for mental patients - no games - no recreation - exercise is 1 hour per week - if the "therapist" is available - there are 3 televisions blasting on 3 different channels (but rules require T.V.'s not to have speakers to insure peace and quiet)(forcing the noise is the medium)
- Behavior control is left to the inmates to establish a pecking order.
- Inmates are warehoused - no realistic therapy
- No matter what mental status (or the crime) of inmates not sent to Devens for mental reasons - they go directly to open population. But for inmates who wear the mental label, they go to maximum security regardless of the type of crime and regardless of the actual mental status (this violate the least restrictive setting principle (youngberg at 3x4) Johnson v Solomon, D Mary 1973, 484 F Supp 278)

16

- Inmates are not provided with proper hygiene supplies or adequate bedding

- Rules require "quiet time" but staff makes noise

- Count time is mandatory in prisons but not in mental hospitals. The BOP requires only one stand up count — the FMC officers require 3 per day.

- Only flashlights are supposed to be used at night for counts (Rule) but officials and nurses turn on the room lights of inmates rooms to awaken the inmate to make them move its body. This is counter therapeutic to "patients" but is routine at "prisons." (Also — officials leave the lights on — switch on outside of room)

- Mental patients must eat their meals within 22 minutes (including the time it takes to go to the dining room, wait in line to get the food, and turn in the tray to the wash room.

- Property purchased at another institution is not allowed at Devens if it is not sold at Devens. Property is destroyed without compensation or due process.

- The mail of civil patients are treated as the mail for sentenced prisoners are treated
    (i) mail from the courts are not considered legal mail and is read by staff

- Rules for mental patients are arbitrary.
    (i) No staples allowed. — mail room sends mail with envelopes stapled
    (ii) Staff send memos (to inmates) with staples

- Inmates cannot touch cleaning supplies — but are required to clean their rooms

- Washing powder (Tide) cannot contain bleach — but use bleach to clean toilet

- No confidentiality in communication to staff or others
    (i) Unit officers read incoming and outgoing mail and memos contrary to BOP rules

- Civil patients cannot make phone calls during day hours

12. SUPERVISORY STAFF AT FMC-DEVENS FAIL TO PROPERLY AND ADEQUATELY TRAIN AND TO SUPERVISE SUBORDINATES. THERE IS NO ROUTINE TRAINING OF MENTAL HEALTH STAFF IN THE DAY-TO-DAY CARE AND TREATMENT OF MENTAL PATIENTS, THUSLY MENTAL PATIENTS ARE EITHER IGNORED WITH INDIFFERENCE OR ABUSED AND MISTREATED.

SUPERVISORS ARE LIABLE FOR THE DEPRIVATION AND VIOLATION OF RIGHTS CAUSED BY THEIR SUBORDINATES. SEE McCLELLAND V. FACTEAU, 10C.1979, 610 F2d 693 AT 696; YBARRA V. RENO THUNDERBIRD, 9C.1984, 723 F2d 675 AT 680-681; WANGER V. BONNER, 5C.1980, 621 F2d 675 AT 679; BOARD OF COUNTY COMMISSIONER V BROWN, 1997, 520 US 397 et 409-411; CITY OF CANTON V. HARRIS, 1989, 489 US 378 AT 388; MATEYKO V. FELIX, 9C.1991, 913 F2d 744)

MENTAL HEALTH STAFF MUST HAVE EXTRA TRAINING AND CLOSER SUPERVISION (MORGAN V DC, 1953, 603 F Supp 254, AFF 824 F2d 1049), A WARDEN HAS A DUTY TO INSURE THAT THE STAFF IS PROPERLY TRAINED (JOHNSON V LOCKHART, 8C.1991, 763 F2d 526, 941 F2d 705)

PHELPS HAS SUFFERED INJURY BECAUSE OF THE FAILURE TO TRAIN AND SUPERVISE STAFF.

13. THE EMPLOYEES AT FMC-DEVENS (AND AT ALL BOP PRISONS) ARE ACTING IN CLEAR ABSENCE OF ALL JURISDICTION AND AUTHORITY IN THE CUSTODY, CONFINEMENT, CARE, AND TREATMENT OF PHELPS.

(A) 18 USC 4006(b) STATES NO CITIZEN SHALL BE DETAINED OR IMPRISONED WITHOUT STATUTORY AUTHORITY.

## VII

## CAUSES OF ACTION

FIRST CAUSE OF ACTION

DAVID WINN IS SUED FOR ESTABLISHING RULES CONTRARY TO BOP RULES, FOR NOT MAKING RULES SPECIFIC TO CIVIL MENTAL PATIENTS, FOR CONDONING THE APPALLING UNLAWFUL ACTIVITIES OF SUBORDINATES

AND FOR FAILING TO PROPERLY AND ADEQUATELY TRAIN AND SUPERVISE HIS SUBORDINATES, THAT CAUSED PHELPS IRREPARABLE INJURY

SECOND CAUSE OF ACTION:

MIKE BOLLINGER, JAMES DODD, S. THOMPSON, AND S. HARVEY ARE SUED FOR FAILING TO PROPERLY AND ADEQUATELY TRAIN AND SUPERVISE THEIR SUBORDINATES IN THE CARE AND TREATMENT OF THE MENTALLY ILL, THE LEARNING OF BOP RULES, AND THE RIGHTS OF INMATES. THEY HAVE FAILED TO PROPERLY AND ADEQUATELY TRAIN THEIR SUBORDINATES IN DISTINGUISHING THE DIFFERENCE IN CIVIL COMMITMENTS (CIVIL PATIENTS) AND CONVICTED PRISONERS AND HAVE FAILED TO PROTECT THE RIGHTS OF CIVIL PATIENTS, AND FOR ALLOWING SUBORDINATES TO TREAT CIVIL PATIENTS AS CRIMINAL PRISONERS.

THIRD CAUSE OF ACTION:

WHEN PHELPS ARRIVED AT FMC-DEVENS, HE WAS INTERVIEWED BY SEVERAL BOP EMPLOYEES AND WAS EVALUATED BY RESPONDENT H. HAAS WHO ACTED IN CLEAR ABSENCE OF ALL JURISDICTION TO CONFINE PHELPS (AUTOMATICALLY) IN MAXIMUM SECURITY IN VIOLATION OF THE 4th AMENDMENT (UNREASONABLE SEIZURE) AND 8th AMENDMENT (CRUEL AND UNUSUAL PUNISHMENTS + MADE APPLICABLE THROUGH THE 5th AMENDMENT BECAUSE PHELPS IS A CIVIL PATIENT) AND THE 9th AMENDMENT (COMMON LAW) AS WELL AS VIOLATING THE AMERICAN WITH DISABILITIES ACT, AND BOP RULES, 18 USC 4081.

HAAS DEPARTED FROM THE STANDARDS OF HIS PROFESSION AND DID NOT EXERCISE PROFESSIONAL JUDGMENT BY NOT MAKING A INDEPENDENT EVALUATION AND DIAGNOSIS BUT MERELY RUBBER STAMPED THE OPINION OF PREVIOUS

EXAMINERS WITH A TOTAL INDIFFERENCE AND DISREGARD AS TO THE ACCURACY OF THE RECORD. HAAS HAS TAKEN A OATH TO UPHOLD AND DEFEND THE U.S. CONSTITUTION AND THE LAWS OF THE UNITED STATES SO HE KNOWS THE LAW, AND UNDERSTAND THE LAWS, BUT STILL ACTED CONTRARY TO THE LAWS. PHELPS WAS LUCID, RATIONAL, COMPLIANT, AND FRIENDLY YET WAS TAKEN TO MAXIMUM SECURITY AND PLACED IN A LOCKED ROOM AT THE ORDERS OF HAAS. HAAS VIOLATED 28 CFR 541. et Seq., BOP POLICY 6000. et Seq, BOP POLICY 3604.03 et Seq, YOUNGBERG v. ROMEO, 1982, 457 US 307    AND DESHANEY v WINNEBAGO, 1989, 489 US 189    AND ROCHIN v CALIFORNIA, 1952, 342 US 165

FOURTH CAUSE OF ACTION:

RESPONDENT J. FLETCHER VIOLATED BOP RULE 3604.03 AND DEPARTED FROM THE STANDARDS OF HIS PROFESSION (UNKNOWN TYPE OF DOCTOR) AND DID NOT EXERCISE PROFESSIONAL JUDGMENT BY PERFORMING THE DUTIES RELEGATED TO A CORRECTIONAL OFFICER (ACTING LIKE A COP) WHEN HE THREATENED TO PUT PHELPS IN DISCIPLINARY SEGREGATION FOR MERELY DISAGREEING WITH HIM, "I KNOW MORE ABOUT BOP RULES THAN YOU," HE SAID, "WANNA BET?" PHELPS SAID. THEN FLETCHER THREATENED TO PUT PHELPS "IN THE HOLE (N-1)" FOR DISAGREEING WITH HIM. PHELPS HAD NOT VIOLATED ANY RULES NOR WAS HE DISORDERLY OR DISRUPTIVE. IT UPSET PHELPS VERY MUCH TO REALIZE THAT EVEN THE DOCTORS DISREGARD THE RULES OF CONDUCT AND CARELESSLY VIOLATE OTHER RULES AND THE RIGHTS OF THE MENTALLY ILL BY ACTING ARBITRARILY, CAPRICIOUSLY, AND VINDICTIVELY.

FIFTH CAUSE OF ACTION:

RESPONDENT J. DAVIS ACTED IN CLEAR ABSENCE OF ALL JURISDICTION WHEN HE VIOLATED B.O.P. RULE 3604.03 BY SCREAMING AND YELLING AT PHELPS IN A THREATENING, HOSTILE, AND MENACING MANNER JUST AFTER PHELPS HAD COMPLETED A CONVERSATION WITH DR. RIGGS (WHO WAS STILL PRESENT AS A WITNESS). DAVIS IS A MALE NURSE AND KNOWS THAT HIS ACTIONS ARE A DEPARTURE FROM THE STANDARDS OF HIS PROFESSION BUT HE ACTED ANYWAY TO CAUSE PHELPS TO FEAR FOR HIS SAFETY (BEING 71 YEARS OLD). PHELPS IS A HEART ATTACK RISK PATIENT AS WELL AS HAVING 2 STROKES (BECAUSE TWO OFFICERS HANDCUFFED HIS ARMS BEHIND HIS BACK AND BEAT HIM WITH FISTS, FEET, AND METAL FLASHLIGHTS BECAUSE THE AREA OUTSIDE HIS ROOM WAS "UNTIDY.")


SIXTH CAUSE OF ACTION:

RESPONDENT B. POTOLICCHIO ACTED IN ABSENCE OF ALL JURISDICTION AND VIOLATED FEDERAL REGULATION 28 CFR 541, et seq, B.C.P. POLICY 3604.03, 18 USC 1001 AND OTHER FEDERAL LAWS WHEN HE (WITH COMPLETE INDIFFERENCE TO THE STATUS OR CONDITION OF PHELPS) ASSAULTED PHELPS, MADE FALSE CHARGES AGAINST PHELPS, MADE A FRAUDULENT WRITTEN INCIDENT REPORT ON PHELPS THAT CAUSED PHELPS TO BE PLACED IN DISCIPLINARY DETENTION FOR A WEEK. POTOLICCHIO ALSO VIOLATED PHELPS RIGHTS UNDER THE 4th, 5th, 8th, AND 9th AMENDMENTS TO THE U.S. CONSTITUTION.

ON 11-23-04 AT APPROXIMATELY 10.30PM PHELPS WENT TO THE OFFICERS STATION ON UNIT N-3 TO GIVE POTOLICCHIO A CONFIDENTIAL MEMO ADDRESSED TO COUNSELOR K. LEONARD INFORMING LEONARD THAT THE STAFF ON N-3 WERE IN VIOLATION

OF FEDERAL LAWS AND BOP RULES, IN THE CARE AND TREATMENT OF THE DISABLED MENTALLY ILL. POTOLICCHIO OPENED THE MEMO (IN VIOLATION OF BOP RULES) AND READ THE MEMO (VIOLATING ANOTHER RULE) AND QUESTIONED PHELPS AS TO THE CONTENT OF THE MEMO (VIOLATING THE 1st AMENDMENT AND ANOTHER B.O.P RULE) POTOLICCHIO BECAME HOSTILE AND ANGRY AND SCREAMED FOR PHELPS TO GET OUT OF THE OFFICE, AND PHELPS COMPLIED;

WHEN PHELPS WAS OUTSIDE OF THE THRESHOLD OF THE DOOR, HE TURNED AND SAID "YOU'RE NOT WEARING A NAME TAG (A VIOLATION OF BOP RULES) WHAT IS YOUR NAME OFFICER?" "DON'T WORRY ABOUT MY NAME" HE SCREAMED AS HE STOOD AND APPROACHED PHELPS MENACINGLY (POTOLICCHIO IS ABOUT 6'4" TALL AND WEIGHS OVER 250 POUNDS AND IS 40 YEARS YOUNGER THAN PHELPS) PHELPS ASK "ARE YOU REFUSING TO GIVE ME YOUR NAME? THAT'S AGAINST BOP RULES." HE SCREAMED "GET — AWAY — FROM — MY — OFFICE." PHELPS COMPLIED AND WALKED ABOUT LOOKING AT THE PICTURES ON THE WALLS, THE CLOCK IN THE OFFICE, ETC. (PHELPS WAS WAITING FOR THE INMATE TELEPHONE TO MAKE A CALL TO CALIFORNIA)

PHELPS APPROACHED A CLEANING CART THAT HAD AUTHORIZED SUPPLIES ON IT FOR INMATES TO CLEAN THEIR ROOMS. IT WAS PARKED IN THE HALLWAY OUTSIDE THE OFFICE. SUDDENLY POTOLICCHIO LEAPED FROM HIS CHAIR AND STARTED SCREAMING FOR PHELPS TO GET INSIDE THE OFFICE. PHELPS WALKED IN. "WHAT DID YOU TAKE OFF THAT CART AND PUT IN YOUR POCKET?" HE SCREAMED ANGRILY OUT OF CONTROL. "I DIDN'T PUT ANYTHING IN MY FUCKIN POCKET" PHELPS SAID. POTOLICCHIO SEARCHED PHELPS AND FOUND NOTHING.

"GET AGAINST THE DOOR" HE YELLED, THEN QUICKLY CHANGED HIS MIND AND TOOK PHELPS IN THE HALLWAY. "GET AGAINST THAT WALL" HE SCREAMED, THEN QUICKLY CHANGED HIS MIND AGAIN AND YELLED FOR PHELPS TO GO TO THE OTHERSIDE OF THE HALLWAY

NOT ONLY DOES STAFF NOT WEAR NAME TAGS, NO OFFICE HAS THE NAME OF THE STAFF ON IT. TO FIND A OFFICE IS JUST A GUESSING GAME. BOP RULES STATE ALL OFFICES WILL BE IDENTIFIABLE.

to lean against the wall with his hands above his head and his feet apart. *

Phelps complied with the order but Potolicchio was not satisfied with the distance between Phelps feet and yelled to move the feet further apart. "I can't" Phelps said, "that's as far as I can go. I have a spinal injury." Potolicchio became more out of control and screamed for Phelps to move his feet apart and simultaneously kicking the right leg of Phelps knocking his leg about 6 inches further apart. Phelps immediately felt severe pain in his back, spine, and legs and cringed in pain. Potolicchio was completely indifferent and yelled "I told you to get those feet apart."

Then the right arm of Phelps fell from the wall to his side. "Get that arm up" Potolicchio screamed, "I can't do this for long" Phelps said, "I have medical problems. I've had a heart attack and if I keep my hands above my head, I'll pass out. I've had 2 strokes and I can't hold my right arm up this long" Potolicchio was callously indifferent and took the right arm of Phelps and slammed it against the wall yelling "Get - that - arm - on - the - wall."

He went back to the office and told Nurse W. Blaton "I'm going to lock him up. I don't like him." He made two phone calls and returned "Why did you cuss me?" he yelled, "What are you talking about?" Phelps ask. "You just cussed me" he yelled, "I heard you." "You were not even here" Phelps said "How could I cuss you if you're not here" Potolicchio stammered "Yeh - well ___ yeh - well ___ yeh - well."

Phelps right arm fell again, but at that same time other officers arrived to escort Phelps to disciplinary detention.

* Phelps was not secured while against the wall. The action was just spiteful punishment

23

POTOLICCHIO THEN TOOK THE MEMOS PHELPS HAD WRITTEN TO COUNSELOR LEONARD AND SPITEFULLY DESTROYED THEM. HE WENT TO PHELPS' ROOM AND TOOK PHELPS PROPERTY AND DESTROYED THE PROPERTY SPITEFULLY AND VINDICTIVELY.

THE NEXT DAY A OFFICER SHOVED A PINK SHEET OF PAPER UNDER THE DOOR WITHOUT SAYING WHAT IS WAS OR WHAT WAS WRITTEN ON IT AND PHELPS COULD NOT READ IT BECAUSE HIS EYEGLASSES WERE SEIZED (AS IT TURNED OUT IT WAS A COPY OF THE INCIDENT REPORT. THE BOP RULES REQUIRE THE REPORT TO BE GIVEN TO THE INMATE WITHIN 24 HOURS AND IF THE INMATE CAN'T READ IT, IT MUST BE READ TO HIM. IT WAS NOT. PHELPS ARGUES THAT IF HE IS GIVEN A DOCUMENT HE CAN'T READ AND IT IS NOT READ TO HIM, IT IS THE SAME AS NOT GETTING THE DOCUMENT AT ALL AND IS A DENIAL OF DUE PROCESS AND VIOLATES BOP RULES)

A WEEK LATER PHELPS HAD A DISCIPLINARY HEARING (3 DAYS OVER THE TIME LIMIT TO HOLD A HEARING) AND THE HEARING OFFICER DISMISSED THE CHARGES AS BEING PATENTLY FALSE, "WHEN I FIRST READ THIS REPORT" THE HEARING OFFICER SAID, "I COULD EASILY SEE SOMETHING WAS WRONG WITH IT, IT DIDN'T MAKE SENSE."

POTOLICCHIO LIED IN THE REPORT, HE FILED A FALSE REPORT, AND HE CAUSED PHELPS TO SUFFER IRREPARABLE INJURY AND SUFFERING.


SEVENTH CAUSE OF ACTION:

RESPONDENT W. BLAZEN ACTED IN CONSPIRACY WITH POTOLICCHIO TO MAKE FALSE CHARGES. SHE ENCOURAGED HIM AND ADVISED HIM. SHE ACTED IN CONCERT AND JOINTLY PARTICIPATED IN THE VIOLATION OF THE RIGHTS OF PHELPS. BOP RULES AND FEDERAL REGULATIONS REQUIRES EMPLOYEES TO INTERVENE WHEN OFFICERS ARE VIOLATING THE RIGHTS OF INMATES AND TO IMMEDIATELY REPORT THE

OFFENDING OFFICER TO SUPERVISORS, SHE DID NOT INTERFERE AND DID NOT REPORT THE ABUSE, ASSAULT, OR VIOLATIONS. SHE FAILED TO EXERCISE PROFESSIONAL JUDGEMENT.

SHE IS THE NURSE FOR THE UNIT AND IS FAMILIAR WITH THE MEDICAL STATUS AND CONDITION OF PHELPS, BUT STILL DID NOT STOP POTOLICCHIO. SHE KNOWS THAT PHELPS IS A CIVIL PATIENT AND KNOWS THAT MENTAL PATIENTS HAVE RIGHTS EXCEEDING THE RIGHTS OF PRISONERS, AND OTHERS, YET SHE DID NOTHING TO STOP THE ASSAULT AND ABUSE. SHE AND POTOLICCHIO VIOLATED 18 USC 241-242 (CIVIL RIGHTS) 18 USC 1621 et Sq (PERJURY) AND OTHER FEDERAL LAWS.

BLAZON AND POTOLICCHIO HAD BEEN PLAYING CARD GAMES FOR ABOUT 2 HOURS PRIOR TO THE INCIDENT. THEY NOT ONLY APPEARED TO BECOME INCREASINGLY "FRIENDLY" BUT ALSO BECAME HOSTILE WHEN PHELPS INTERRUPTED THEIR GAMES TO HAND HIM THE MEMO. PHELPS TOLD THE DISCIPLINARY OFFICER, "YOU KNOW WHAT THIS IS ALL ABOUT? POTOLICCHIO JUST WANTED TO IMPRESS A FEMALE WITH HIS MANHOOD AND POWER. THAT'S WHAT THIS IS ALL ABOUT — TRYING TO IMPRESS A FEMALE, BUT ALL HE SUCCEEDED IN DOING WAS TO PROVE HE HAS A CHILDISH INFANTILE MIND WITH THE INABILITY TO MAKE CORRECT DECISIONS AND UNABLE TO CONTROL HIS EMOTIONS. THE HEARING OFFICERS AGREED AND DISMISSED THE CHARGES SAYING "STAY OUT OF TROUBLE."

EIGHTH CAUSE OF ACTION.

UNDER THE "INDIVIDUALIZED TREATMENT" OF 18 USC 4081, AND THE "NATURE OF THE CHARACTER" OF 18 USC 4247(C), AND UNDER THE PROVISIONS OF THE AMERICAN'S WITH DISABILITIES ACT, AND UNDER THE MENTALLY ILL BILL OF RIGHTS (42 USC 10841) PHELPS MADE A REQUEST FOR A SINGLE ROOM, IN OPEN

POPULATION IN THE LEAST RESTRICTIVE SETTING NOT ONLY BECAUSE OF HIS AGE (71) AND MEDICAL INFIRMITIES, RESTRICTIONS, AND LIMITATIONS (STROKE, HEART ATTACK RISK, ARTHRITIS, AND OTHERS) BUT ALSO FOR SAFETY AND SECURITY THAT PREVENTS HOSTILE CONFRONTATIONS WITH OTHERS WHO DO NOT SHARE THE SAME RELIGIOUS BELIEFS AND FINDS HIS BELIEFS OFFENSIVE AND UNACCEPTABLE TO SUCH A DEGREE THAT THEY BECOME COMBATIVE. PHELPS DOES NOT PROSELYTIZE HIS RELIGION NOR DOES HE RECRUIT CONVERTS, HOWEVER OTHER INMATES KNOW HIS IDEOLOGIES. HOW?

AT HIS ~~PREVIOUS~~ PREVIOUS PRISON, INMATES WOULD DISCOVER CASES OF PHELPS PUBLISHED IN THE LAW BOOKS AND THEN PHOTOCOPY SEVERAL COPIES OF THE CASE AND THEN DISTRIBUTE THE PHOTOCOPIES TO OTHER INMATES WITH THE SOLE INTENT AND SCHEME TO CAUSE PHELPS TO SUFFER IN SOME WAY. THE COPIES WERE ALSO GIVEN TO SELECTED STAFF MEMBERS. MOSTLY PHELPS SUFFERED HARASSMENTS, OSTRACISM, AND SNIDE REMARKS AND IDLE THREATS OR VEILED THREATS. BUT HE ALSO SUFFERED IN OTHER WAYS. BLACK INMATES WOULD FALSELY REPORT THAT PHELPS CALLED THEM A "NIGGER" OR SOMETHING DEROGATORY JUST TO GET PHELPS PUT IN THE HOLE OR MOVED TO ANOTHER UNIT.

AT HIS PREVIOUS PRISON, AN INMATE DISTRIBUTED COPIES OF CASES TO OTHER BLACK INMATES AND STAFF. HE WAS IMMEDIATELY TRANSFERRED TO ANOTHER PRISON FOR ENDANGERING THE LIFE OF ANOTHER INMATE AND FOR INTERFERING WITH THE THERAPY AND TREATMENT PROGRAM OF OTHERS.

TWO DAYS AFTER PHELPS ARRIVED AT FMC-DEVENS HE PASSED A GROUP OF BLACK INMATES. ONE BLACK INMATE REMARKED TO THE OTHERS "THERE'S THAT RACIST M___ F___" (INDICATING PHELPS) PHELPS HAD NEVER SEEN THEM BEFORE AND HE IGNORED THE REMARKS. HOW DID THEY KNOW?

PHELPS WENT TO THE DINING ROOM AND IN THE DINING ROOM WAS THE SAME BUTNER INMATE THAT HAD BEEN TRANSFERRED FROM BUTNER. THEY ALL LIVED IN THE MENTAL HEALTH UNITS.

COUNSELOR LEONARD REFUSED TO ASSIGN PHELPS TO A SINGLE ROOM NOTWITHSTANDING THE FACTS OF ELIGIBILITY. ACCORDING TO BOP RULES IT IS THE COUNSELOR WHO ASSIGNS ROOMS AND HE DOES THAT ARBITRARILY WITHOUT SCREENING OR EVALUATING INMATES FOR COMPATIBILITY OR INDIVIDUAL NEEDS. WHATEVER BED IS VACANT IS WHERE THE INMATE GOES. HE VIOLATES THE TERMS OF 18 USC 4081 (INDIVIDUALIZED TREATMENT) AND 18 USC 4247(e) (ACCORDING TO THE CHARACTER OF THE INMATE) HE ALSO VIOLATES DESHANEY V WINNEBAGO, 1989, 489 US 189.

BUT TO KEEP PHELPS LOCKED IN MAXIMUM SECURITY OR IN A SEMI LOCKED UNIT VIOLATES THE LEAST RESTRICTIVE SETTING REQUIREMENTS OF THE SUPREME COURT. (REMEMBERING THAT PHELPS IS A CIVIL PATIENT AND NOT A CRIMINAL PRISONER, SO THE COURTS MUST EXAMINE PATIENTS RIGHTS - NOT PRISONERS RIGHTS. SEE ROMEO V YOUNGBERG, 1981, 644 F2d ___ (COURTS CANNOT USE CASE LAW DECISIONS FOR CONVICTED PRISONERS TO BE APPLIED TO CIVIL COMMITMENTS) AFFIRMED IN YOUNGBERG V ROMEO, 1982, 457 US SCT.

NINTH CAUSE OF ACTION.

PHELPS IS DENIED HIS 1ST AMENDMENT RIGHT TO PETITION THE COURTS (DENIAL OF ACCESS TO THE COURTS)

TAKEN LITERALLY, PHELPS IS NOT DENIED "ACCESS TO THE COURTS." HE IS DENIED MEANINGFUL ACCESS TO THE COURTS.

THE RULES (ESTABLISHED BY WARDEN WINN) PROHIBITS PHELPS FROM LEAVING UNIT N-3 EXCEPT TO GO TO THE DINING ROOM FOR MEALS. HE CANNOT GO

TO THE LAW LIBRARY TO CONDUCT LEGAL RESEARCH IN ORDER TO PREPARE DOCUMENTS FOR THE COURTS AND INTERESTED PARTIES, PHELPS SENT A MEMO TO THE LAW LIBRARY REQUESTING LEGAL RESEARCH ASSISTANCE, BUT THERE WAS NO RESPONSE. HE SENT A MEMO TO COUNSELOR LEONARD AND UNIT MANAGER DOCKETT REQUESTING PERMISSION TO GO TO THE LAW LIBRARY BUT NEITHER RESPONDED. THEY WERE INDIFFERENT TO THE REQUESTS.

PHELPS GAVE PAPERS TO ANOTHER INMATE (WHO LIVED IN A OPEN UNIT) TO PHOTOCOPY AT THE LAW LIBRARY. THE MACHINES WOULD NOT PHOTOCOPY THE BLUE INK AND THE COMMISSARY SELLS ONLY PENS WITH BLUE INK.

PHELPS ASK THE UNIT OFFICER TO USE THE UNIT TYPEWRITER (WHICH EACH UNIT IS REQUIRED TO HAVE) AND WAS INFORMED THAT THE UNITS DO NOT HAVE TYPEWRITERS FOR INMATE USE.

PHELPS ASK A FRIEND TO GET SOME FORMS FROM THE LIBRARY (WHICH THE LIBRARY IS REQUIRED TO HAVE) AND SOME ADDRESSES OF COURTS (ETC) AND WAS TOLD THAT THE LIBRARY DID NOT PROVIDE SUCH DOCUMENTS AND PHELPS WAS INFORMED THAT HE COULD NOT GET HELP FROM OTHER INMATES EVEN THOUGH THE STAFF WILL NOT ASSIST HIM AND WILL NOT ALLOW HIM TO GO ANYWHERE TO ASSIST HIMSELF. AS AN ADDENDUM TO THIS COMPLAINT,

PHELPS REQUESTED SOMEONE TO COPY THIS PETITION, BUT THIS REQUEST WAS DENIED UNTIL A GLANCE AT THE PETITION REVEALED IT WAS A LAWSUIT AGAINST BOP EMPLOYEES. IT WAS AGREED THAT PHELPS WOULD PAY FOR THE PHOTOCOPYING. EXTRA COPIES WERE MADE AND GIVEN TO THE FACILITY ATTORNEY, SOME RESPONDENTS, AND OTHERS EVEN BEFORE THE COMPLAINT WAS SENT TO THE COURT (BY COUNSELOR LEONARD).

WHEN PHELPS ARRIVED AT FMC DEVENS HE REQUESTED PERMISSION TO GO TO THE LAW LIBRARY. HIS DOCTOR (HAAS) APPROVED THE REQUEST. AFTER SOME DELAY OF NOT BEING ALLOWED TO GO, PHELPS ENQUIRED ABOUT A PERSON AND DR. HAAS INFORMED PHELPS THAT THE UNIT TEAM MEMBERS WAS PUNISHING HIM FOR THE INCIDENT REPORT HE RECEIVED AND WHICH THE DISCIPLINARY COMMITTEE DISMISSED AS BEING A FRAUDULENT

28

REPORT.

The team members did not give Phelps any due process before imposing the punishment of denying him access to the law library. One of the team members was case manager Day, and Phelps had already informed her that the disciplinary committee had dismissed the complaint against him. He ask her to expunge the incident report from his record (which she is authorized to do) but she said "that's not my business - that's their business. She (and the other team members) decided to retaliate against Phelps for prevailing on the incident report and to punish him for prevailing by denying him access to the law library.

This punishment without any due process also violates double jeopardy and is retaliatory vindictive punishment.


## 10th CAUSE OF ACTION; RESTRICTION TO COURT ACCESS:

Rules of the BOP require assisting inmates to gain access to the courts. Phelps requested that $150.00 be withdrawn from his account and to have a check made payable to the court as a filing fee for this action. This is a routine matter and BOP policies provide the procedures. The money in question belongs to Phelps. Phelps is not incompetent and manages his own funds. BOP policy states that inmates may withdraw funds at anytime and can send money to anyone not in violations of rules. The BOP only holds the money - like a bank.

"Susan" (Business office supervisor) refused the request saying that she had set up her own new procedures whereby the institution must now wait for the court to review any action (to determine its merit) and then wait for the court to issue an order to withdraw the money.

This is just a sham to create obstacles and barriers for inmates to

overcoming to gain access to the courts. Counselor Leopard informed Phelps that Warden Winn conducted the procedure after it was implemented. This procedure is designed solely to harass inmates and serves no legitimate function. It merely creates obstacles to accessing the court.

## II. Cause of Action:

On 1-28-2005 Jeffery Schultz collected a group of inmates that were on "call-outs" (which is a list of inmates and their scheduled activities). Phelps' name was on the list. Prior to that, a nurse had notified Phelps that he was on "call-out" but because he was on Unit N-3 (a semi-locked unit) that Dr. Schultz, P.M. (whatever P.M. is) would come to that unit and escort the inmates to a group therapy room (inmates on N-3 must be escorted on call-outs. They cannot leave the unit unescorted except to go to meals)

Dr. Schultz told the inmates "you are scheduled for group therapy with me or another area. You don't have to go if you don't want to. You have the right to refuse. If you refuse I will ask you to sign a refusal form (BP-358(60)) and if you sign, you will not be put on call-out again. I won't bother you about it."

Phelps informed Schultz he was refusing and requested the form to sign. Schultz said Phelps must go to group therapy and sign the forms there and he must stay in group therapy the full hour before signing the form. Phelps said "let me get this straight. I can refuse treatment but you are requiring me to receive the treatment before I can refuse it? - The very same treatment I have a right to refuse?" He replied "yes."

Phelps refused to go saying that was the most illegal thing he (and Hotra) said (his wife went to the mall and spent 500 dollars on clothes to save money / 40 years old). Since Schultz said no one was required to go, Phelps returned to his room.

30

two hour later Schacca brought the Refusal form to Phelps for Phelps to sign. Phelps signed the form. Schacca said "Because you Refused to go on call out and Because you Refused group therapy, I'm writing a Disciplinary Incident Report on you." Phelps said "Let me get this Straight - you're going to Punish me for not doing what I am not required to do?" "Yes" he said, "You cant do that" Phelps said "I have a Right to Refuse - you gave me that Right." "Well, you have the Right to Break the law too but you must face the consequences." he said. Phelps said "Thats as illogical as your other Remarks - nobody has a Right to do a crime, thats why we have Prisons." "Well, anyway" he said "I'm writing a Incident Report on you."

Phelps went to his counselor to get a Administrative Remedy form. The counselor Refused. Phelps went to the Unit manager and the Warden to explain the situation and they Refused to listen to any accidents. "If you were on call out and you didn't go - you get Punished!" "Thats not only irrational" Phelps said "but its blatantly capricious."

Phelps was so distressed that he could not eat his meal (he had to get them at the inmate dining Room) and he was so upset he had to seek medical attention from the Nurse on the unit (Phelps has had 2 Strokes and a heart attack - he is 71 years old) (under stress and excitement causes him medical problems)


## 12th CAUSE OF ACTION:

Phelps does not come under the Jurisdiction of 18 USC 4243 (Insanity statute). The statute Requires a crime. The Government has admitted that Phelps did not commit a crime. In 1992 the Government discovered evidence that showed the actual innocence of Phelps and that he was not mentally ill (under the law) but still would not Release him because of his shared Religious Beliefs that the Government found offensive (not Unlawful - Just offensive).

31

13TH CAUSE OF ACTION

THE U.S. ATTORNEY GENERAL ABUSED HIS DISCRETION MADE CLEARLY ERRONEOUS INTERPRETATIONS AND CONCLUSIONS OF LAW AND FACT, AND MISAPPLIED THE FEDERAL MENTAL HEALTH LAWS. THE LAW REQUIRES PHELPS TO BE HOSPITALIZED. THE FEDERAL GOVERNMENT DOES NOT HAVE A CIVIL HOSPITAL IN WHICH TO CONFINE INSANITY ACQUITTEES (FOUCHA V LOUISIANA, 1994, 504 US 71, WILLIAMS V RICHARDSON SC 1973, 481 F2d 358, DAVIS V REVERTE, IL 2001, 264 F3d 86) USV SHERMAN, 122 F Supp 364

THERE ARE NO PROVISIONS IN THE FEDERAL MENTAL HEALTH LAWS THAT ALLOWS, OR AUTHORIZES FEDERAL HOSPITALIZATION OR CONFINEMENT. THE ATTORNEY GENERAL HAS ONLY 4 OPTIONS AND ALL THOSE OPTIONS DO NOT INCLUDE ANYTHING FEDERAL (18 USC 4247(i))

THE U.S. ATTORNEY GENERAL MISAPPLIED THE LAW AND PUT PHELPS IN FEDERAL CUSTODY.


14TH CAUSE OF ACTION:

THE U.S. BUREAU OF PRISONS DOES NOT HAVE LAWFUL CUSTODY OF PHELPS AND CONSEQUENTLY, THE EMPLOYEES OF THE BOP DO NOT HAVE LAWFUL JURISDICTION OR AUTHORITY OVER PHELPS AND CANNOT TREAT PHELPS AS A CONVICTED PRISONER (US V JONES, 1983, 463 US 369,) BECAUSE HE IS A UNCONVICTED CIVIL MENTAL PATIENT (NOT A CONVICTED PRISONER) AND MUST BE TREATED BY RULES OF A MENTAL HOSPITAL-NOT BY THE RULES OF A PRISON (TYLER V CICCONE, WDMO 869, 299 F Supp 684; CAMERON V TOMES, DMASS 1992, 783 F Supp 1511

THE RESPONDENTS REFUSE TO ACKNOWLEDGE THAT PHELPS IS A UNCONVICTED CIVIL MENTAL PATIENT (AND NOT A CONVICTED SENTENCED PRISONER) AND TREATS HIM WORSE THAN SENTENCED PRISONERS UNDER RULES ESTABLISHED FOR ONLY CONVICTED PRISONERS

THE GUIDELINES FOR THE TREATMENT OF THE MENTALLY ILL IS PRESENTED IN 42 USC 10841 AND FOY V GREENBLOTT, 1983, 190 CAL RPTR 84, 141 CASE 1. SEE MENTALLY V DORCHESTER COUNSELING CENTER, DMASS 1991, 772 F Supp 43 AFF 96 F2d 887

PHELPS HAS THE RIGHT TO REFUSE ANY TREATMENT (ANDERSON V COUNTER, 1981, 483 US 635, WALTERS V WESTERN, 1990, 864 F2d 695, SHIELDS V BURGEL, 1987, 814 F2d 1201, CRUELBURY V SPENCE, 19_, 969 F2d 172 BLODGE US, 1981, 452 A2d 357, WHITE V NAPOLEON, 1990, 897 F2d 103; BEE V GREENMAN, 657 F2d ___ 1017

15th CAUSE OF ACTIONS

THE U.S. BUREAU OF PRISONS, AND ITS REPRESENTATIVES, HAVE VIOLATED THE TERMS OF THE AMERICANS WITH DISABILITIES ACT (42 USC 12101), THE GERIATRIC ELDER CARE ACT, AND THE BILL OF RIGHTS FOR THE MENTALLY ILL (42 USC 10841).

THEY HAVE TREATED THE MENTALLY ILL WORSE THAN SENTENCED PRISONERS. THEY DO NOT PROVIDE INDIVIDUALIZED CARE OR TREATMENT PARTICULARIZED TO THE TYPE OF DISABILITY AND THE CHARACTER OF THE DISABLED PERSON. THEY DO NOT PROVIDE A INDEPENDENT ADVOCATE FOR CIVIL PATIENTS. THE ACCOMMODATIONS ARE FOR CONVICTED AND SENTENCED PRISONERS NOT FOR THE MENTALLY DISABLED. STAFF IS UNQUALIFIED IN THE CARE OF THE ELDERLY AND THE MENTALLY DISABLED PATIENT, AND DO NOT USE PROFESSIONAL JUDGMENT.

PHELPS HAS BEEN ABUSED, MISTREATED, ASSAULTED, THREATENED, TORTURED, AND TERRORIZED BY U.S. BUREAU OF PRISON EMPLOYEES IN HIS 20 YEARS OF INCARCERATION. OFFICERS OF THE BOP HAVE BEATEN HIM WHILE HE WAS RESTRAINED, CARRIED HIM TO A WALL AND SPRAYED HIM WITH FIRE HOSES AND CHEMICAL FIRE EXTINGUISHERS, HANDCUFFED HIM TO A FENCE AT NIGHT IN RAINSTORMS, SNOWSTORMS, AND SUMMER HEAT, DEPRIVED HIM OF FOOD, CLOTHING, SHELTER, AND MEDICAL CARE, USED MEDICATION ON HIM FOR REASONS OTHER THAN MEDICAL, CONFINED TO ISOLATION, SEGREGATION, AND QUARANTINE WITHOUT ANY LEGITIMATE REASONS AND WITHOUT ANY DUE PROCESS, HANGED ON DOORS AND FENCES BY HANDCUFFS ON WRISTS OVER THE HEAD WITH FEET OFF THE FLOOR, STRAPPED TO BED IN 5 POINT RESTRAINTS FOR 5 DAYS BECAUSE OF BEING 10 MINUTES LATE FOR AN APPOINTMENT AND THEN BURNED WITH LIT CIGARETTES AND HOT COFFEE WHILE IN RESTRAINTS, AND MANY OTHER OUTRAGEOUS ACTS OF TORTURE WHICH WAS NOT UNDOCUMENTED – BUT ADMITTED TO. ONE JEW DOCTOR READ PHELPS RECORD AND TRIED TO MURDER PHELPS BY DIAGNOSING PHELPS AS A DIABETIC AND CLAIMING IT WAS HIS DUTY TO SAVE PHELPS LIFE WITH INSULIN (THE U.S. MARSHALS COLLECTED PHELPS TO TAKE HIM TO COURT ON A WRIT JUST 15 MINUTES BEFORE THE SCHEDULED INJECTION). ALL THAT ABOVE IS DOCUMENTED – AND MORE! YET, IN ALL THE 20 YEARS PHELPS HAS BEEN INNOCENT. ALL HIS SUFFERING WAS IN RETALIATION FOR SOMETHING – MOSTLY FOR FILING LAWSUITS OF THE ABOVE IN COURT.

33

16th CAUSE OF ACTION

When Phelps entered the institution, he had no personal property because the B.O.P. would not allow his property to be transported with him even though he was transported on a private jet aircraft and there was ample room for the property.

Over a month later the property arrived from his previous prison at Butner, North Carolina. Several items were not allowed simply because they were not sold to inmates at Devens (but was sold to inmates at Butner). The warden's policy is "if we don't sell it here - you can't have it."

Phelps had in his possession Bible lessons which the officers would not allow Phelps to have because of its religious content. All the literature was religious and were lessons on the scripture of the Christian Holy Bible, as it relates to society, governments, people, culture, and world events.

Nothing in the literature advocated the disruption or operation of the institution. The rejection violated Phelps' 1st, 5th, and 9th (common law) rights as well as his rights under 42 USC 2000bb - 2000bb-4 (Religious Freedom Restoration Act) because his religion teaches he must study to show himself approved of God (2 Timothy 2:15, 1 Thessalonians 4:11). See Bryant v Gomez, 9C1995, 46 F3d 948; Hernandez v Commissioner, 1989, 490 US 680, Meece v Rutherford, 1984 469 US 576), the deprivation also violates the religious rights protected by federal law regarding institutions (42 USC 2000cc).

Can a institution or facility, impose conditions and restrictions upon a person of which it does not have lawful custody? Can prison rules be applied to civil-committed civil-mental patients which interfere with the person's religious beliefs?

The prison allows the anti-white teachings of Islam, Moorish Science Temple, Black Hebrew Nationalists, Rastafarians, etc. but will not allow teachings of white racial purity (see McCabe v Arave, 9C1987, 827 F2d 634 at 658 - advocating racial purity is insufficient to justify censorship)

34

## 17th CAUSE OF ACTION:

Does a unconvicted civil mental patient have a greater right of privacy than convicted and sentenced prisoners?

Phelps has no privacy at all in the B.O.P. system, under rules requiring him to be treated as a convicted prisoner (28 CFR §571.101(a)(2) and B.O.P. Policy 7331.04.) Phelps, and his room/cell, and property can be searched at any time under any circumstances, for no reason or for any reason at all (and has been).

His phone calls are monitored and recorded. All his movements are monitored by video surveillance cameras, his personal and legal mail is opened, inspected, read, photocopied, and interfered with — without due process.

Mail for unconvicted inmates cannot be processed in the same manner as mail for convicted prisoners, nor can the unconvicted be subjected to the same regulations (Jones v. Wittenberg, N.D. Ohio 1971, 323 FSupp 93, 330 FSupp 707, 440 FSupp 60, 456 FSupp 748, 451 F2d 854) The unconvicted civil mental patient has the right to send and receive mail as any free world citizen (Tyler v. Ciccone, W.D. MO 1969, 299 FSupp 684 Remote 3) and no one can open the mail of a unconvicted civil mental patient (Guajardo v. Estelle, 1978, 580 F2d 748) The privacy rights of a civil commitment cannot be abrogated on grounds of convenience (Johnson v. Brelje/Lessard, 1980, 701 FSupp 456) see also Dulin v. Zunker, 1973, 511 F2d 419, Inmates v. County Sheriff, 535 F2d 864, Nolan v. Scafati, U.S.CA1 1970, 430 F2d 551, Palmigiano v. Travisono, 50 FRD 309 FSupp 1265, Hopkins v. Collins, M.C. 1977, 548 F2d 503 and 411 FSupp 831, Hardwick v. Ault, M.D. GA 1977, 447 FSupp 116, Burns v. Lamme, 455 FSupp 666, 520 FSupp 1055, 551 FSupp 432, 713 F2d 546)

## 18th CAUSE OF ACTION:

Phelps was transferred from Butner, N.C. to FMC-Devens in violation of Rule 23 Federal Rules of Appellate Procedure. Phelps filed a Rule 23 Request with David Winn (successor) and 5 USC §552c but Respondent Winn returned the request refusing to respond.

## SUMMARY AND CONCLUSION

1. First the Court must determine its own Jurisdiction (_STEEL CO v CITIZENS_, 1998, 523 US 83 at 94). A complaint that alleges violations of Laws and the Constitution gives the Court Jurisdiction (_BELL v HOOD_, 1946, 327 US 678. _BIVENS v 6 UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS_, 1971, 403 US 388; _ALEXANDER v COMMISSIONER_, Dec 1987, 825 F2d 499 at 502 (Court has inherent powers to act in the interest of Justice); if the Court has Jurisdiction, it must

2. Determine if 18 USC 4245 can be applied to Phelps and that requires a statutory analysis. Words of a statute are to be given their plain meaning (_CARMINETTI v US_, 1917, 242 US 470 at 485), and to look to the intent of Congress (_US v CITY v DARDIS_, 1973, 50 TC3 19 at 104). The statute requires a criminal act before it can be applied (_WILLIAMS v WYRICK_, 11 C1984, 754 F2d 1431). If Phelps did not commit a crime (and the Government has admitted he didn't) then the law is inapplicable and the matter, and whatever happen thereafter is unlawful. If Phelps is unlawfully under the Jurisdiction of 18 USC 4245, then the Court must

3. Determine if the U.S. Attorney General misapplied the Law; Courts can reverse decisions when there is a misapplication of law or a application of the wrong legal standards (_PORTLAND GENERAL ELECTRIC v BONNEVILLE_, 10 1981, 641 F2d 1006 at 1009) if the Attorney General misapplied the law, the Court can end the enquiry because everything after that is unlawful. If he did not, the Court must

4. Determine if the U.S. Bureau of Prisons has lawful custody of Phelps. A person cannot be incarcerated absent a conviction (_BAKER v McCOLLAN_, 1977, 443 US 137 at 144; 18 USC 4001(a)) and when the BOP is notified that a person may be falsely imprisoned, the BOP has a duty to investigate the validity of the incarceration (_MARTINEZ v CITY OF LA_, 4 C1986, 141 F2d 1373 at 1381) when the BOP was notified in 1992 that Phelps did not commit the crimes, it did nothing. If the BOP has lawful custody of Phelps, the Court must

5. Determine if the BOP employees have lawful Jurisdiction and Authority to act. A statute

cannot grant jurisdiction where the constitution forbids it (Gilson v. Republic of Ireland, DCC 1982, 682 F2d 1022 at 1028). If the employees have no legal authority to act, then whatever they do is unlawful. If the employees have jurisdiction, the court must

6. Determine if the employees have properly applied the law, and BOP rules. Rules must be based on statutory authority (Davidson v. DC, DC 1989, 562 A2d 1075) and courts should not hesitate to strike down BOP rules that are unconstitutional (Smith v. Johnson, 1972, 349 F.Supp 268). If rules regulate employee conduct, and employees violate that rule, there is no shield from liability (Combsert v. US, 1991, ___ US ___, 113 LEd2d 335). If a rule is in conflict with a law it is unconstitutional (US v. Hegland, ISC 2001, 238 F3d 1222 at 1237). 28 CFR 551.101 is in conflict with 18 USC 4243 and US v. Jones, 1983, 463 US 354. If the rules are proper –

7. The court must determine if the actions of the employees are lawful, the employees must be qualified and must act professionally (Youngberg v. Romeo, 1982, 457 US 307), the employees know that they cannot treat prisoners as a convicted prisoner (Lock v. Jenkins, DC 1981, 641 F2d 488) and must treat him better (Hamilton v. Love, 328 F.Supp 1182) and must make professional judgments (Santana v. Collazo, 1C 1986, 793 F2d 41). If the employees have not acted properly or lawfully, the court must

8. Determine the level of injury inflicted on Pirtle, and

9. The amount of damages to award for violating Pirtle's 1st, 4th, 5th, 8th, 9th Amendment Rights under the US Constitution and for violating the provisions of 18 USC 241-242, 18 USC 4243 and 4247, 18 USC 4001(a), 42 USC 10841, 42 USC 20000b–20000c, 42 USC 1201, 5 USC 552–552a, other federal laws, federal regulations, Bureau of Prison Rules and Policies, Code of Ethics and Employee Conduct, Common Law, and Supreme Court Law, and for causing irreparable physical, mental, emotional, and spiritual loss, harm, injury, anguish, distress, pain, and suffering.

37

IX

## PRAYER AND RELIEF

PHELPS PRAYS THAT THIS COURT RECOGNIZES THAT PHELPS IS A UNCONVICTED CIVIL MENTAL

PATIENT (NOT A CONVICTED CRIMINAL PRISONER) AND THAT THE COURT USES THE STANDARDS OF

"PATIENTS RIGHTS" AND NOT PRISONERS RIGHTS AS EXAMPLED IN <u>US V JONES</u>, 1981, 596 A2d 183,

411 A2d 624, 432 A2d 364, 463 US 354, <u>YOUNGBERG V ROMEO</u>, 1982, 457 US 307, <u>PARHAM V JR</u>,

1979, 442 US 584, <u>FOUCHA V LOUISIANA</u>, 1992, 504 US 71, <u>PENNHURST V HALDERMAN</u>, , 451 US 1,

<u>MINERAL V PATIENT HOSPITAL</u>, 1972, 407 US 245, <u>HUMPHREY V CADY</u>, 1972, 405 US 504, <u>RENNIE V KLEIN</u>,

1979, 458 US 119, <u>OCONNER V DONALDSON</u>, 1987, 422 US 563, <u>DESHANEY V WINNEBAGO</u>, 1989,

489 US 189, <u>CHELSHIRE HOSP V NLRC</u>, [C]1992, 689 F2d 1132, <u>US TRUST V NJ</u>, 1977, 431 US 1,

<u>BATTLE V ANDERSON</u>, CDARE 1974, 376 FSupp 400, 457 FSupp 719, 447 F2d 516, 564 F2d 388,

594 F2d 786, 614 F2d 251, <u>SOCIETY V JONES</u>, 731 F2d 1259, <u>XXX V JONES</u>, 1984, 729 F2d 96

AND OTHER CASES INVOLVING NON-PRISONER CIVIL PATIENTS;

PHELPS PRAYS THAT THIS COURT FOLLOWS THE ADEMINISHMENTS OF THE COURT IN <u>ROMEO V</u>
<u>ROYCEST F2d 53</u>

<u>YOUNGBERG</u>, 1982, 644 F2d 147 AFF 457 US 307 THAT IT CANNOT TAKE CASE LAW DECISIONS

FOR CONVICTED PRISONERS AND APPLY THESE DECISIONS TO CIVIL COMMITMENTS;

PHELPS PRAYS THAT THIS COURT USES THE TOTALITY OF CIRCUMSTANCES STANDARD IN

ASSESSING THE CONDITIONS OF CONFINEMENT

PHELPS PRAYS THE COURT USES THE HEIGHTENED SCRUTINY STANDARD IN INTERPRETING PHELPS

ARE THE ABSOLUTE STANDARD.

PHELPS PRAYS FOR RELIEF AND REMEDY;

PHELPS PRAYS FOR DECLARATORY JUDGMENT AND REQUEST THE COURT TO DECLARE;

1. PHELPS DOES NOT FALL UNDER THE JURISDICTION OF 18 USC 4243 IF HE IS ACTUALLY INNOCENT

AND DID NOT COMMIT A CRIME BECAUSE THE STATUTE REQUIRES A CRIME TO HAVE BEEN COMMITTED;

2. The Federal Government does not have a civil hospital in which to confine mental insanity acquittees and 18 USC 4243 requires "hospitalization";

3. There are no provisions in the Federal mental health laws that allows, or authorizes, Federal confinement of insanity acquittees or other Federal civil commitments;

4. The U.S. Attorney General abused his discretion, made clearly erroneous interpretations and conclusions of law and fact, and then misapplied the provisions of 18 USC 4243 and 18 USC 4247;

5. Neither the courts nor the U.S. Attorney General have lawful jurisdiction or authority to commit insanity acquittees to the custody, and confinement, of the U.S. Bureau of Prisons;

6. The U.S. Bureau of Prisons does not have lawful custody, jurisdiction, or authority over Pineus or anyone committed under 18 USC 4243 or 18 USC 4246;

7. Employees and members of the U.S. Bureau of Prisons (regular or under contract) do not have lawful custody, jurisdiction, or authority over Pineus or anyone subject to 18 USC 4243 or 18 USC 4246; they acted in absence of any personal jurisdiction;

8. Employees and members of the U.S. Bureau of Prisons are not legally qualified to care for, or treat, Pineus or anyone subject to 18 USC 4243 or 18 USC 4246;

9. There is a legal and constitutional difference between unconvicted civil mental patients and convicted criminally sentenced prisoners and unconvicted civil patients cannot be treated as convicted or sentenced prisoners;

10. Unconvicted civil patients have more rights and privileges than pretrial detainees or convicted prisoners;

11. Unconvicted civil mental patients have, at least, the same, or greater, rights of a person on house confinement;

12. Unconvicted civil mental patients cannot be subjected to the rules and regulations of a jail or prison and must have their own specific particularized set of rules and regulations designed to promote healing, recovery and rehabilitation;

13. THE SUPERVISORY STAFF OF THE U.S. BUREAU OF PRISONS FAILED TO PROPERLY AND ADEQUATELY TRAIN AND SUPERVISE SUBORDINATE B.O.P. MEMBERS IN THE CARE, TREATMENT, AND PROVIDING SERVICES FOR COMMITTED CIVIL MENTAL PATIENTS

14. THOSE COMMITTED UNDER 18 USC 4243 OR 18 USC 4246 MUST BE TREATED AS PATIENTS - NOT PRISONERS; AND HAVE A ADVISORY - SEE 42 USC 10306

15. PHELPS SUFFERED UNLAWFUL AND UNCONSTITUTIONAL ABUSE AND MISTREATMENT BY U.S. BUREAU OF PRISON EMPLOYEES AND MEMBERS;

16. PHELPS HAS BEEN UNLAWFULLY AND UNCONSTITUTIONALLY INCARCERATED AND IMPRISONED IN THE U.S. BUREAU OF PRISONS

17. PHELPS HAS SUFFERED A DEPRIVATION, DENIAL, AND VIOLATION OF HIS CONSTITUTIONAL, STATUTORY, CIVIL, AND COMMON LAW GUARANTEES, FREEDOMS, LIBERTIES, RIGHTS, PRIVILEGES, IMMUNITIES, PROTECTIONS, AND SAFEGUARDS

18. THE RESPONDENTS KNEW THE CONSTITUTION AND LAWS, AND UNDERSTOOD THE CONSTITUTION AND THE LAWS, BUT STILL KNOWINGLY, INTENTIONALLY, AND WILLINGLY ACTED CONTRARY TO THE CONSTITUTION AND THE LAWS; AND ACTED WITHOUT PROFESSIONAL JUDGMENT,

19. THE RESPONDENTS CAUSED PHELPS IRREPARABLE PHYSICAL, MENTAL, EMOTIONAL, AND SPIRITUAL LOSS, HARM, INJURY, ANGUISH, DISTRESS, PAIN, AND SUFFERING;

20. PHELPS HAS SUFFERED A MISCARRIAGE OF JUSTICE AND A MANIFEST INJUSTICE AND BOTH ARE COMPENSABLE UNDER THE CONSTITUTION AND THE LAWS;

21. PHELPS IS A PATIENT - NOT A PRISONER AND LAWS AND RULES FOR PRISONERS DO NOT APPLY TO HIM.

PHELPS PRAYS FOR PUNITIVE DAMAGES IN THE AMOUNT OF TWO MILLION (2,000,000) TAX FREE DOLLARS FROM EACH RESPONDENT,

PHELPS PRAYS FOR ATTORNEY FEES AND COST;

PHELPS PRAYS FOR INJUNCTIVE RELIEF ENJOINING THE B.O.P. FROM CONFINING ANY PERSON SUBJECT TO THE PROVISIONS OF 18 USC 4243 OR 18 USC 4246;

PHELPS PRAYS FOR ANY OTHER RELIEF AND REMEDY THE COURT DEEMS FAIR, JUST, PROPER, LAWFUL AND EQUITABLE TO PROMOTE JUSTICE, TO PREVENT A MISCARRIAGE OF JUSTICE AND TO MEET THE ENDS OF JUSTICE

Respectfully Submitted on this 30th Day of January, 2005

Coy Phelps _____ IN PRO SE

COY PHELPS 78871-011

FMC - DEVENS

42 Patton Road

P.O. Box 879

AYER, MA 01432


CERTIFICATION

I, COY PHELPS, CERTIFY UNDER PENALTY OF PERJURY, PURSUANT TO 28 USC 1746, THAT

I AM THE PETITIONER IN THIS ACTION AND THAT ALL THE STATEMENTS MADE HEREIN

WERE MADE BY ME, AND THAT ALL THE STATEMENTS ARE TRUE AND CORRECT

ACCORDING TO MY BEST KNOWLEDGE AND BELIEF

DATE: 1-30-2005

Coy Phelps _____ IN PRO SE

COY PHELPS 78871-011

FMC- DEVENS

42 Patton Road

P.O. Box 879

AYER, MASSACHUSETTS

01432

CERTIFICATE OF SERVICE

SEE THE SERVICE INFORMATION ON THE REVERSE SIDE OF THE SUMMONS

Coy Phelps

41

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COY PHELPS | CASE NO: |
| PETITIONER | |
| ~v~ | NOTICE OF |
| DAVID WINN, et. al. | LAWSUIT |
| RESPONDENT(S) | |

TO:          42 PATTON ROAD, P.O. BOX 880, AYER, MA 01432

FROM: COY PHELPS 78872-011, FMC DEVENS, P.O. BOX 879, AYER, MA 01432

### PLEASE TAKE NOTICE

THAT ON (OR AS SOON AS POSSIBLE THEREAFTER) THE DATE APPEARING BELOW, YOU WILL BE

SUED (IN THE ABOVE COURT) FOR A PERSONAL INJURY AND CIVIL RIGHTS VIOLATIONS,

IN WHICH COY PHELPS IS A VICTIM OF YOUR ACTS, ACTIONS, INACTIONS, OR OMISSIONS.

DATE:

_Coy Phelps_                    IN PRO SE

COY PHELPS 78872-011

42

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COY PHELPS | CASE NO. |
| PETITIONER | |
| ~V~ | RETURN |
| DAVID WINN, et.al. | |
| RESPONDENT(S) | |

TO:        EMC DEVENS, 42 PATTON ROAD, P.O. BOX 880, AYER, MA 01432

ENCLOSED IS A COPY OF A COMPLAINT, NOTICE OF LAWSUIT AND A SUMMONS TOGETHER WITH 2 COPIES OF THIS RETURN AND A SELF ADDRESSED ENVELOPE. PLEASE KEEP ONE COPY OF THIS RETURN FOR YOUR RECORDS AND RETURN THE OTHER TO COY PHELPS 78872-011 AT P.O. BOX 879, AYER, MA 01432. BY SIGNING THIS RETURN YOU ARE NOTIFYING THE ABOVE PETITIONER THAT YOU RECEIVED THE ABOVE DOCUMENTS AND THAT YOU DO NOT WAIVE OR SURRENDER ANY RIGHTS OR DEFENSES.

DATE:

                    COY PHELPS  78872-011

I CERTIFY I RECEIVED A COPY OF A COMPLAINT, NOTICE, AND SUMMONS IN THE ABOVE CASE.

DATE:

        SIGNATURE:

        PRINTED NAME:

43