UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
FOURTH DIVISION

COY PHELPS                          Case: 4:05-CIV-4003-GAO

         Petitioner

                            PETITIONERS RESPONSE TO
     -v-                   RESPONDENTS MOTION TO
                            DISMISS MADE ON
                            JULY 14, 2005

DAVID WINN, et. al.
         Respondent(s)

---

The above Petitioner COY PHELPS, appearing in pro se, filed a civil rights and personal injury complaint on 12-30-2004 under Bivens v Six Unknown Agents of the Federal Bureau of Narcotics, 1971, 403 US 388, 29 LEd2d 619, 91 SCt 1999 and under 5 USC 551 et. Seq., 5 USC 552a(g)(1), 5 USC 700-706, 28 USC 1331, 28 USC 1343, 28 USc 1346, 28 USC 2201-2202, 28 USC 2671-2680, 42 USC 233, 42 USC 1988, 42 USC 12101 et seq, 42 USC 2000bb-2000cc-5, and supplemental jurisdiction under 28 USC 1367.

Phelps paid the filing fee and had the Respondents served by personal service on each Respondent which were sued in their individual and personal capacities.

Phelps alleged that the U.S. Bureau of Prisons(BOP) lacked jurisdiction and authority to have custody of him and that all the employees, members, staff, and volunteers ( including those under contract with the BOP ) were acting in clear absence of all lawful jurisdiction and authority and that everything that they did, whether beneficial or deterimental, was unlawful and unconstitutional and that, because of the absence of jurisdiction and authority, Phelps suffered irreparable injury by the violation of his Constitutional, statutory, procedural, civil, and common law rights.

Phelps has filed two other related case in this court (4:05-CIV-40042-GAO and 4:05-CIV-40063-GAO )but the court has not responded to either even though Phelps has paid his filing fees.

The Respondents moved for a Motion to Dismiss on July 14, 2005 alleging the following affirmative defenses:

1. Improper Venue
2. Lack of Subject Matter Jurisdiction
3. Absolute and Qualified Immunity
4. Violation of Prison Litigation Reform Act(PLRA)
    a.  Three Strikes law
    b.  Exhaustion of Administrative Remedies
5. Vague, confusion, and disorganized Complaint
6. Inapplicability of Respondeat Superior
7. Failure to State a Claim

Then, as a catch all defense, the Respondents moved for a more definite statement IF THE COURT RULED AGAINST THE MOTION TO DISMISS.

Phelps moved for an Enlargement of time in which to respond to the above affirmative defenses;

Phelps' response follows:

First, this court should note that the First Circuit has held that any defense not stated in the Motion to Dismiss is forever lost to the defendants ( US v Thurston, 1C2004, 358 F3d 51 and at note 9; In Re Cumberland Farms Inc, 1C2004, 284 F3d 216 at 225 citing Knapp Shoes Inc v Sylvania Shoe Mfg Co, 1C1994, 15 F3d 1222 at 1226; Deposits Trust Co v Slobusky, 1C1982, 692 F2d 810 at 813) and if a defendant fails to present all the defenses in a single action, a second or successive motion raising other defenses and objections cannot be        made (Century 21 Real Estate v Nev Rel, 1978,    448 FS 1237; Orange Theater v Raybeck Amusement Co, 3C1944, 139 F2d 871.)

Most striking about this case is that the Respondents have not denied any of the allegations Phelps has made in the Complaint. All of the defenses they have made are technical defenses.

Secondly, there are foundational facts that must be presented.
1.  Phelps is a Civil Commitment( not a convited criminal)
2.  Phelps is a mental patient( not a "prisoner.")
3.  Phelps is " incarcerated " not " hospitalized " as required by 18 USC 4243
4.  The Bureau of Prison has authority ONLY over pre-trial Detainees and those Convicted of crimes( not Civil Commitments) ( 18 USC 4042)

5. The Bureau of Prisons has jurisdiction ONLY over Penal and Correctional Institutions( 18 USC 4042 and 28 CFR 0.95-0.96 ). It does not have jurisdiction over " hospitals."

6. The federal government does not have a civil hospital in which to confine insanity acquittees( <u>Foucha v Louisiana</u>, 1994, 504 US 71 )and insanity acquittees cannot be criminally confined( <u>Buzynski v Oliver,</u> 1C1976, 538 F2d 6 at 8 )

7. Insanity acquittees cannot be treated as convicted prisoners( <u>Jones v US</u>, 1983, 483 US 354 ar 369) and the principles of criminal sentencing do not apply to insanity acquittees( <u>US v Jain</u>, 7C1999, 174 F2d 892 at 898.) Congress has forbidden non statutory confinement in federal prison( <u>Lono v Fenton</u>, 7C1978, 581 F2d 645.)

8. The standard for assessing the violation of rights for convicted prisoners is callous, complete, or deliberate indifference( <u>Estelle v Gamble</u>, 1976, 429 US 97) but the standard for assessing the violation of rights for civil commitments is a failure to exercise professional judgment or departing from the standards of ones' profession( <u>Youngberg v Romeo</u>, 1982, 457 US 307) See <u>Shaw by Strain v Stackhouse,</u> 3C1990, 920 F2d 1135 at 1144-1145 for discussion and comparison; <u>Deshaney v Winnebago</u>, 1989, 489 US 189 at 195( government has an affirmative duty to provide a safe, secure, healthy,
and humane environment for those civilly committed.)

9. Courts should not apply case law decisions of convicted prisoners    to    cases    of    civil    commitments( <u>Romeo v Youngberg,</u> 3C1981, 644 F2d 147 affirmed <u>Youngberg v Romeo</u>, 1982, 457 US 307.)

10. 18 USC 4247(i) requires insanity acquittees  to be hospitalized ( <u>US v Sherman</u>, NDIll 1994, 722 F Supp 504 at 505-506 ) either in a State mental hospital( or a political subdivision), or in a locality, or in a hospital under the control  of a private agency. THERE ARE NO PROVISIONS IN THE LAW FOR FEDERAL HOSPITALIZATION OR FEDERAL CONFINEMENT.

11. 18 USC 4247(i) requires the facility to be approved and certified by the Secretary of the Department of Health and human Services ( No facility in the BOP system has ever been approved by the Secretary.)

12. 18 USC 4247(i) requires the facility to have a specific rehabilitation program ( 18 USC 4247(a)) that has been approved and cerrified by the Secretary( The BOP does not have a rehabilitation program that meets the requirements of §4247(a) and no rehabilitation program in the BOP has ever been approved or certified by the Secretary.

## ANALYSIS OF RESPONDENTS' MOTION TO DISMISS

First, the Respondents move for a more definite statement is frivolous. The motion to dismiss clearly indicate that the Respondents read the complaint and understood what they read or they could not have made the type of defenses that they made.

Secondly, the Respondents argument is misplaced when they state that Phelps is a in forma pauperis petitioner subject to the " frivolous " standard of 28 USC 1915. Phelps has always paid his fees. "Frivolous" can only be applied to informa pauperis cases and when a person pays the filing fee, the courts must address the merits of the case. The previous court cases that the respondents cited repeatedly committed plain error in their decisions. They treated the petitions of Phelps as a informa pauperis petition and erroneously applied the " frivolous " standard of §1915. The Respondents in this case has made the same blunder. Courts look at the letters " PR " in the case number and assume that the petitioner is a prisoner and is proceeding in forma pauperis and rule accordingly. That is plain error.

Thirdly, the focus of the respondents argument is also misplaced. They give 5 pages of their argument(of the 12 page motion)to the issue of the Prison Litigarion Reform Act of 1995( as amended in 1997 ) which includes 11 USC §523, 18 USC §3624, 18 USC §3626, 28 USC §1346, 28 USC §1915, 28 USC §1915A, and 42 USC §§ 1997-1997h however the respondents argument is moot because the PLRA does not apply to Phelps( See section of violation of the PLRA below)

The claim of improper venue is misplaced. The respondents cite the 1986 commitment as their authority, however, Phelps was released, temporarily, in 1999 and recommitted in 2002. It is the 2002 court order that is related to the issue in this case, not the 1986 order.( See section on Improper Venue below)

### ARGUMENT

#### Improper Venue:

The respondents in this case are misguided into thinking that Phelps is challenging his commitment in this court.

Phelps is challenging his commitment in the U.S. District Court for the Northern District of California at this time, but

4

the gravaman of this case is the complete absence of jurisdiction and authority of the BOP. The absence of lawful jurisdiction and authority is the umbrella issue that overshadows and permeates all other issues in this case. If this court loses sight of this issue, it will rule inappropriately just as other courts have done and just as the respondents in this case have done. All of the other issues in this case hang under the umbrella of a complete absence of all lawful jurisdiction and authority.

However, the issue a complete absence of jurisdiction and authority cannot be argued without the mention of the commitment because the commitment is inexorably intertwined with the issues of the case. " But for " the commitment, there would be no issues in this case yet the issue of the commitment and the issues of the conditions of confinement are distinctly separate.

The erroneous commitment alleged in this case is used to support the facts that the BOP is without any lawful jurisdiction and authority to have Phelps in confinement.

Clearly the court of 2002 made a plain error when the judge viewed Phelps as a convicted and sentenced prisoner and ordered that he be confined in the U. S. Bureau of Prisons as she would do under 18 USC 3621. Other courts have fallen prey to the belief that Phelps is a convicted and sentenced " prisoner" and has ruled accordingly. The respondents in this case have also assumed that Phelps is a convicted prisoner and has argued the motion to dismiss in that light. That is plain error. The court that committed Phelps to the custody of the U.S. Bureau of Prisons(April 2002) did not have the authority to do so. Under the terms of 18 USC 4243 she could only commit Phelps to the custody of the U. S. Attorney General who would then obey the mandate of 18 USC 4247(i). She did not have the authority to commit Phelps to the U. S. Bureau of Prisons... but she did.

The BOP knows that it does not have lawful custody of Phelps and has no lawful jurisdicition over Phelps. The official said so when Phelps entered the system in 1986. The BOP should have disobeyed the court order because it was a unlawful order and it had the authority to refuse custody of Phelps, but did not.

The respondents in this case cannot logically argue that this

5

case is challenging the commitment per se. At best they can only
state that the commitment and the conditions of confinement are
inter-related.

Phelps has filed two related cases in this court challenging
the confinement of those committed under 18 USC 4143 and18 USC
4243( the mental health civil commitment statutes.) In the case
of 40063 Phelps alleged that §4247(i) did not allow for federal
confinement, just as he did in this case. But he also mentioned
the commitment orders without identifying any court or person.
In other words, the issues are inter-related but distinct.

The major issue in this case is the complete lack of lawful
jurisdicition and authority of the BOP to have Phelps in custody.
All other issues are subordinate to that issue.

LACK OF SUBJECT MATTER JURISDICTION:

This is a frivolous defense considering Phelps is challenging
the application of federal laws and regulations and BOP policy
statements(rules). The court in Tyler v Ciccone, WDMo 1969, 299
F Supp ___ held that the rules of the BOP did not apply to civil
commitments. Phelps is challenging the application of 28 CFR
551.101(a)(2) and BOP Policy Statement 7331.04 which authorized
civil commitments( including insanity acquittees ) to be treated
as convicted and sentenced prisoners. This is contrary to the
mandate of Supreme Court law in Jones v US, 1983, 483 US 354 at
369. Phelps is making a " as applied " challenge to 18 USC 4243
as being punitive in effect although it is a civil statute( Phelps
v US, 9C1992, 955 F2d 1258.)

Phelps has cited jurisdictional statutes which gives this
court jurisdiction to act. In addition, the Respondents have
admitted that this court is proper for the case and they admit in
footnote 1 at page one in the Motion to Dismiss that this court
has proper subject matter jurisdiction.

The Respondents defense alleging a lack of subject matter
jurisdiction is frivolous in light of their own admission and in
light of the challenges to federal laws, regulations, and BOP
policies.

6

A <u>Bivens</u> action and a §1331 action are the proper vehicles for people in federal custody alleging a constitutional, statutory, or civil rights violation ( <u>US v Stanley</u>, 1987, 483 US 669; <u>Carlson v Green</u>, 1982, 446 US 14; <u>Davis v Passman</u>, 1979, 402 US 228; <u>Butz v Economou,</u> 1978, 438 US 478; <u>Califano v Sanders</u>, 1977, 430 US 99, <u>Bush v Lucas</u>, 1983, 462 US 367.)

There is no precise definition of federal jurisdiction under §1331( <u>Merrill v Dow</u>, 1986, 478 US 804) but a well pleaded complaint can survive on the merits regardless of a federal question jurisdiction (<u>Christensen v Colt</u>, 1988, 486 US 800) because it is the character of the action that determines jurisdiction, not the claims of the defendants( <u>Thurston v Jordan</u>, 1983, 460 US 533.)

Phelps is a civilly committed mental patient( not a criminally sentenced prisoner ) and §1331 and §1343 are the proper vehicles for mentally disabled claims to challenge conditions of confinement

<u>Ahmed v State Agents of Soc and Health Ser</u>, 9C2001, 262 F3d 979 ( when a civil rights violation is claimed, the court has jurisdiction under §1343) and a federal court has jurisdiction to entertain a suit to recover damages under any law providing for the protection of rights( <u>York v Strong</u>, 9C1963, 324 F2d 450.) <u>Deshaney</u> and <u>Youngberg</u> are laws that bestow those rights.

The 9th Circuit has approved a <u>Bivens</u> action for the 1st Amendment ( <u>Gibson v US</u>, 9C1986, 781 F2d 1334 at 1337) and the U.S. Supreme Court has approved a <u>Bivens</u> action for the 9th and 4th Amendments ( <u>Bivens</u>, 403 at 397) and so too has the 9th and 10th Circuits ( <u>Slayton v Willingham</u>, 10C1984, 726 F2d 631 at 635; <u>Kotarski v Cooper</u>, 9C1986, 799 F2d 1342 at 1344.)   The U. S. Supreme Court has approved a <u>Bivens</u> action for the 5th Amendment( <u>Davis v Passman</u>, 1979, 442 US 228 at 248-249) and the 8th Amendment( <u>Carlson,</u> 446 at 19.)

The allegations by the Respondents that a <u>Bivens</u> action is the improper vehicle is not only without merit it is frivolous.

A victim of federal misconduct may sue directly under the Constitution even absent statutory provisions( <u>Gibson v US</u>, 9C1986, 781 F2d 1334 at 1341-1342.)

7

The Respondents in this action allege that the Federal Tort Calim is the proper vehicle for this action but their claim is misplaced.    The Federal Tort Claim Act ( 28 USC §1346 et. seq ) does not address constitutional or civil rights violations and the damage amount is limited to $50,000 dollars.    Whenever a plaintiff has sued prison officials for deprivation of civil rights, the District Court need not consider tort claim prerequisites under §1346 or §2671( Patmore v Carlson, DIll 1975, 392 FS 737.)

The teachings of Bell v Hood, 1946, 327 US 678 established federal question jurisdiction even if the court ultimately decides the plaintiffs rights were not violated, and the federal court has subject matter jurisdiction over any claim under federal laws (Tosco, at 493-496.)

Under 42 USC §1988, the District Court can use common law whenever there is not other provisions for jurisdiction( Gila River Indian Com v Hennington, Burnham, & Richardson, 9Cl980, 626 F2d 708 at 714; Black Hills Institute of Geological Research v US Dept of Justice, DSCl993, 812 FSupp 1015; Danis Indust Corp v Fernasco Environ Restora Managmnt Corp, SDOhio 1996, 947 FS 323.)

5 USC 551 et seq and 5 USC 552a(g)(1) gives the court jurisdiction to review the action of an agency that refuses to disclose Freedom of Information requests.    Phelps made such requests to Warden Winn and the Federal Medical Center and the U.S. Bureau of Prisons. They refused to provided the information requested.

Phelps cited 5 USC 700-706 as District court jurisdiction to review agency decisions ( together with 5 USC 551 et seq ) however, agency decisions can be reviewed under a Bivens §1331 action ( McCartin v Norton, 9Cl982, 674 F2d 1317; SAC & Fox Tribe of Miss in Iowa Election Bd v BOI Affairs, NDIowa 2004, 321 FS2d 1055; Wedgewood Village Planning v Ashcroft, DNJ 2003, 293 FS2d 462; Meisel v FBI, SDNY2002, 204 FS2d 684.)

Any challenge to federal laws or regualtions confers subject matter jurisdiction on the District Court ( Trentacosta v Frontier Pac Aircraft Indust Inc, 9Cl987, 813 F2d 1553.)

As Phelps stated previously, he is challenging the constitutionality of several federal laws and federal regualtions as applied.

A District Court can sustain subject matter jurisdiction when the complaint reveals a proper basis ( Gerritsen v LA, 9Cl987, 819 F2d 1511) and when the complaint is not artfully pleaded( Williams v US, 9Cl969, 405 F2d 951 at 954.)

Any non-frivolous assertion establishes subject matter jurisdiction( Boiled v Calif Pro of Soc of Jesus, 9Cl999, 196 F3d 940 at 951) and a dismissal for lack of subject matter jurisdiction is nopt appropriate when claims are substantial and which are not foreclosed by prior U. S. Supreme Court decisions( Mays v Kirk, 5Cl969, 414 F2d 131 at 135 citing Hilgeman v Nat Life Ins Co of Amer, 5Cl977, 547 F2d 298 at 300.)

Phelps has raised substantial questions and claims of constitutional violations and such claims raises geniune issues of fact to be resolved by a jury at trial( Evans v Jeff D., 1986, 475 US 717 at 722) therefore, this court has subject matter jurisdiction of such claims and issues( Jeff D v Kempthorne, 9C2004, 365 F3d 844.)

Phelps has stated a violation of the American with Disabilities act and that, in itself, raises a federal question( Asselin v Shannee Mission Medical Center, D Kan 1995, 894 FS 1479.) Phelps has been classified by the courts as being a mentally disabled person which qualifies him under the ADA. The Warden, and the supervisor Respondents do mot make any allowances for the disdability and makes the same demands upon the mentally disables as it makes upon the inmates who are not disabled.

Phelps calimed a 1st Amendment violation and a violation of the Religious Freedom act when the BOP officials seized his Christian bible lessons and destroyed them without any due process

In considering a motion to dismiss on the grounds of lack of subject matter jurisdiction, the court is not bound to the allegations in the complaint and can look beyond the pleading to gain subject matter jurisdiction( Ernst & Young v Deposit Eco Prot Corp, DRI1994, 862 FS 709 aff 45 F3d 530.) Because the Respondents attack is on the federal claims, it goes to the merits and the court must look to the merits

to determine if the case should be dismissed( <u>Mungivino v Chicago Housing Authority</u>, DDel1995, 901 FS 261) and a facial attack on the the complaint requires the court to look to see if Phelps has sufficiently alleged a basis for subject matter jurisdiction taking all the allegations in the complaint as true (<u>Anderson v US</u>, MD Fla 2002, 245 FS2d 1217 aff 317 F3d 1235; <u>Hayden v Blue Nose</u>, MDAla 1994, 855 FS 344; <u>Vega-Encarnacion v Babilonh</u>, 1C2003, 344 F3d 37). Recall that the threshold to withstand a motion to dismiss for a lack of subject matter jurisdiction is lower that to withstand a motion to dismiss for a failure to state a claim( <u>Center v Shalala</u>, WDPa1995, 937 FS 496 aff 96 F3d 1434.)

Phelps has alleged a violation of constitutional and statutory rights( see section of failure to state a claim.)

### IMMUNITY:

The respondents allege absolute immunity for the U. S. Public Health Service employees. That is not only a frivolous claim but it is nonsense. No person in the Executive Branch of the U.S. government has absolute immunity( <u>Tasker v Moore</u>. 5C1990, 738 F2d 1005) not even the President of the United States ( <u>Nixon v US</u>, DCC1991, 938 F2d 239.) In addition, there is no immunity for civil rights violations( <u>Walden v Wishengard</u>, 1C1984, 745 F2d 149) nor for constitutional violations( <u>Rivas v Freeman</u>, 11C1991, 940 F2d 1491.)

The respondents assert that they have immunity under 28 USC 2680 because they are performing discretionary functions but that is not true. Winn, Bollinger, Thompson, Harvey, and the other supervisors are being sued for NOT performing their statutory duties. In other words, to receive immunity the respondent must take some affirmative action regardless if that action is right or wrong. Here, with the exception of Winn, the supervisors are sued for failing to properly and adequately train, supervise, monitor, and control their subordinates. That is, they are sued because they did NOT act. The issue of failing to train and supervise is discussed in the section Respondeat Superior below.

Absolute immunity does not apply where prison policies contribute to the violations( <u>Crooks v Nix</u>, 8C1989, 872 F2d 800 at 803.)

In this case prison policy was a key element in the violations. 28 CFR 551.101(a)(2) and BOP Policy Statement 7331.04 state that all civil commitments will be treated as convicted prisoners.

In addition, Congress has waived immunity under the Administrative Procedures Act( 5 USC 551 et seq and 5 USC 700-706) which provided judicial review of agency actions and decisions( South Delta Water Agency v US, 9C1985, 767 F2d 531.) The decision to treat Phelps as a convicted prisoner is contrary to Supreme Court law and this court can review that decision.

The United States has also waived immunity under 5 USC 552a(g)(1) in regard to the Freedom of Information Act in that federal agencys can be sued for failing to maintain current and accurate records and for refusing to disclose those records.

The United States has waived immunity regarding the Federal Tort Claims Act and the government appears in the same manner, and to the same extent, as a private individual under like circumstances (28 USC 2674 Bush  v Eagle-Pichee Indust, 9C1991, 927 F2d 445 at 447.)

Here we have a conundrum. The Public Health Service employees are actually on contract with the Bureau of Prisons just as a private physician is under contract with the BOP to provide medical care and treatment to the prisoners in the BOP. A private physician under contract with the BOP are liable as BOP employees( West v Atkins, 1988, 487 US 42; Ort v Pinchback, 11C1986, 786 F2d 1105 Brown v Mitchell, EDVa2004, 327 F S2d 615 at 662 and note 83 Walker v Horn, 3C2004, 385 F3d 321 at 332 note 24 Jackson v Fauver, DNJ 2004, 334 FS2d 697 at 744.)

BOP employees enjoy only qualified immunity as long as the rights of a person were not clearly established.  If the right was clearly established under Supreme court law, then the BOP employee has no immunity( Harlow v Fitzgerald,1982 , 457 US 818 at 819.)

The 1st Circuit has adopted the 3 part test of Harlow. In Whalen v Mass Trial Court, 1C2005, 397 F3d 19 at 23, the court present the 3 part test:

1. Does the complaint state a violation of rights
2. Was the rights clearly established
3. Was the violation reasonable.

This test was essentially restated in <u>Garvie v Jackson</u>, 8C1988, 845 F2d 647. The court said that when examining the issue of qualified immunity the court must ask(1) was there a right, (2) was the right clearly established, and (3) Did the defendants violate the rights.

For the answer to the last question, the court is directed to the section failure to state a claim.

There are several Supreme Court cases to guide us through the maze of qualified immunity( <u>Harlow v Fitzgerald</u>, 1982,457 US 800; <u>Sigert v Gilley</u>, 1991, 500 US 226; <u>Mitchell v Forsyth</u>, 1985, 472 US 511; <u>Anderson v Creighton</u>, 1987, 483 US 635; <u>Saucier v Katz</u>, 2001, 533 US 194; <u>Graham v Conner</u>, 1989, 490 US 386;

<u>Wilson v Layne</u>, 1999, 526 US 603; <u>Antoine v Byers & Anderson</u>, 1993, 508 US 429; <u>Hope v Petzer</u>, 2002, 536 US 730; <u>Conn v Gilbert</u>, 1999, 526 US 286; <u>Butz v Economou</u>, 1978. 438 US 478; <u>Davis v Scherer</u>, 1984, 468 US 183; <u>Malley v Briggs</u>, 1986, 475 US 335; and <u>Wyatt v Cole</u>, 1992, 504 US 158.

The 1sty circuit has firmly held that no government has immunity when that enployee violates the clearly established rights of asnother ( <u>Riverdale Mills Corp v US</u>, D Mass 2004, 337 FS2d 247;) and in <u>Carlson v Gorecki</u>, 7C2004, 374 F3d 461 the court held that the cloak of qualified immunity is removed from government officials if the plaintiff can show that the law prohibiting the government officials conduct was clearly established. In this case, it is clearly established that a unconvicted civil commitment cannot be imprisoned ( 18 USc 4001(a) and cannot be treated as a convicted prisoner ( <u>Jones v US</u>, op cit.)

In the above cases cited, it can be deduced that a government is liable when the employees acts recklessly or outrageously in a manner that would shock the conscience, or fails to act, or exhibits complete indifference to the rights of the injured party and indifferent to the consequences of the employees acts.

12

Clearly established rights means supreme court decisions⟨ (Jackson v Coalter, 1C2003, 337 F3d 74 at 84) and BOP employees asre liable when they violate clearly established rights (Virgili v Gilbert, 6C2001, 272 F3d 391) Mental patients have all the right as other citizens except those rights specifically denied by law and Phelps is a federal mental patient.... not a prisoner.

Phelps stated previously that the unbrella issue of this case was the complete absence of al jurisdiction on the part of the BOP. Secondary to that issue is the abuse and mistreatment of the mentally ill and the mentally disabled. These two issues are the heartbeat of this case. Mental illness is a disability and the American with disabilities act has its own private cause of action provision( Travis v Hawkins, 5C2004, 381 F3d 407 ) to remedy the abuse and mistreatment.( See section on failure to state a claim.)

Several Supreme court cases explain the clearly established rights principle which include Cleavinger v Saxner, 1985, 474 US 193; Harlow v Fitzgerald, 1982, 457 US 800; Mitchell v Forsyth, 1985, 472 US 511; Hunter v Bryant, 1991, 502 US 224; Anderson v Creighton, 1987, 483 US 365, Sigert v Gilley, 1991, 500 US 226; Wilson v Layne, 1999, 526 US 603;Conn v Gabbert, 1999, 526 US 286; Behrens v Pelletier, 1996, 516 US 299.)

These cases reveal that the court should apply the objective test..... insofar as officials conduct does not violate clearly established rights which a reasonable person would have known (Saucier v Katz, 2001, 533 US 194; Hope v Pelzer, 2002, 536 US 730; US v Lanier, 1997, 520 US 259; Johnson v Fankell, 1997, 520 US 911; Malley v Briggs, 1986, 475 US 335.)

The rights of Phelps have been clearly established and the BOP employees know it. They know the law, they understand the laws, and yet they acted contrary to the laws to cause Phelps injury. They acted recklessly, outrageously, and maliciously with complete indifference to Phelps' rights or to the consequences to their actions. They departed from the standards of their profession and did not exercise professional judgment and caused Phelps irreparable injury. For that, they have not immunity.

Even if the official is mistaken in his belief that the right was not clearly established, he is still liable( Anderson 483 US at 640) and if the official sets into motion a chain of events that eventually causes an injury to another, he need not have participated in the injury to be liable and need not even be aware of the injury to be liable( Johnson v Duffy, 9C1978, 588 F2d 740 at 743.)

The standards of reasonableness for purposes of qualified immunity is different from the reasonable standard of the 4th amendment( Robinson v Solano County, 9C2002, 278 F3d 1007 at 1012)

and even action taken with court approval, or under the order of the court, does not shield a person with immunity( Antione, 508 US at 435-436)

Even though the San Francisco court sent Phelps to prison under a court order, the BOP employees are not shielded with immunity because they knew that they had no lawful jurisdiction to have custody of Phelps.

When Phelps arrived in the BOP system in 1986, he was forced to sign a waiver of liability. He was told then, that the BOP did not have lawfuly custody of him because there was nothing in the laws that allowed the BOP to have custody, so....he had to sign a waiver of liability or else Phelps would be indefinitely locked into a solitary room under disciplinary segregation for all the time in custody of the BOP. "We can't mix you with convicted prisoners," the lieutenant said," its against the law. Sign this waiver and you can get out of this room."

Phelps has a clearly established right to be free of incarceration in a federal prison( Lono v Fenten, op.cit; 18 USC 4001(a)) and he has a clearly established right to be hospitalized( 18 USc 4243 ) and to be hospitalized in a safe, secure, healthy, and humane environment( DeShaney v Winnebago,( op.cit). Even if Phelps was a convicted and sentenced prisoner, he has the same rights( Farmer v Brennan, 1994,511 US 825

14

## RESPONDEAT SUPERIOR:

This defense made by the Respondents is frivolous. They claim that they are not liable because they did not participate in the injuries caused by their subordinates and, therefore, they cannot be held liable vicariously. Their claim is misplaced because phelps sued the supervisiors for failing to properly and adequately train, supervise, manage, monitor, and control their subordinates.

Winn was a direct participant in the injuries but he is also the executive supervisor of the facility. Winn refused to allow Phelps to receive a newsletter publication which merely expressed anti government sentiments and the separation of the States. He acted arbitrarily and capriciously and without any lawful justification. Winn also participated in other injuries and these incidents are presented in the section failure to state a claim.

A failure to properly and adequately train, supervise, monitor, and control subordinates is a cognizable civil rights action( King v Higgins, 1Cl983, 702 F2d 18 at 20-21) and it is well settled that supervisors are liable for the acts, actions, and omissions of their subordinates( Stockton v Porter, 4Cl984, 737 F2d 368; Orpiano v Johnson, 4Cl990, 632 F2d 1096 at 1101; Williams v White, 8Cl990, 897 F2d 942; Finney v Hutto, 8Cl978, 548 F2d 740 aff 437 US 678; Blydon v Mancusi, 2Cl999, 186 F3d 252; Wright v Smith, 2Cl994,        21        F3d        496        at 501;Wilsie v California Department of Corrections, 9Cl988, 406 F2d 515 at 516; Madrid v Gomez, NDCal 1995, 889 FS 1146 at 1249; City of Canton v Harris, 1989, 489 US 378.)

Under Spencer v Doe, 2Cl998, 139 F3d 107 at 112 supervisors can be held liable for the acts of their subordinates by(1) direct participation,(2) after learning of the wrong, fail to remedy the wrong, (3) create a policy, rule, custom, or practice that would cause the injury, (4) allow the wrongs to continue by condoning and approving the wrongs by tacit inaction,(5) being grossly negligent in managing their subordinates( see also Wright v Smith, 2Cl994, 21 F3d 496 at 501.) The first circuit courts also apply these standards.

If a prison official has knowledge that their subordinates are not acting properly or professionally, and are creating a risk of harm to others, and fails to take reasonable steps to prevent such harm, then the supervisor is liable.( Orpiano, 632 F2d at 1101; Withers v Levine, 4Cl980, 615 F2d 158 at 161; Penn v Oliver, EDVir 1972, 351 FS 1292 at 1294; Perry v Walker, EDVir 1984, 586 FS 1264.)

At this institution, there is a pattern of pervasive indifference to the constitutional rights of inmates.

Neither the BOP or Warden Winn has a policy, rule, or regulation regarding the care and treatment of the unconvicted civilly committed mentally ill or mentally disabled patient. because the BOP does not have lawful custody of civil commitments. There is no training policy, no training program. no training procedures. The staff, members, and employees of the BOP receive absolutely no training or instruction in the care of the unconvicted civilly committed mental patient.

The employees are trained with penological objectives as the goal. There are no policies with the goal of rehabilitation of the mentally ill even though 18 USC 4247(a) mandates such training. The warden has failed to establish any policy, practice, or procedure in the care, treatment, and rehabilitation of unconvicted civilly committed mental patients committed under 18 USC 4243 or 18 USC 4246. He, and his staff, treats the patients as convicted and sentenced prisoners under the authority of 28 CFR 551.101(a)(2) and BOP Policy Statement 7331 which are contrary to Supreme Court law of Jones v US.op.cit.

When the warden, or staff, know, or should know, that their actions, or inactions, violate the constitutional rights of a inmate, and act anyway to violate those rights, they are liable for the injuries(King v Higgins, 1Cl983, 702 F2d 18) and the warden is personally liable for injuries when the warden fails to train the staff( LeMaire v Maas, DOrel998, 745 FS 623; HAGUE V CIO, 1938, 307 US 496.)

Although not liable under the respondeat superior theory,

the warden, and supervisory staff, are liable when they fail to
execute statutory duties ( as in 18 USC 4243 and 18 USC 4246 and
18 USC 4247) (Arruda v Berman, DMass 1981, 522 FS 766 at 768-769;
Dimarzo v Cahill, 1C1978, 575 F2d 15; Inmates of Suffolk County
Jail    v    Einsenstadt,    1C1974,    494    F2d    1196;
Hall  v  Inmates  of  Suffolk  County Jail, 1974, 419 US 977;
Duchsine v Sugarman, 2C1977, 566 F2d 817.)

       Supervisory liability is not for action taken but rather for
actions not taken that is the proximate cause of injury( Blyden
at 264) and inadequate training and supervisions is a basis of
liability for deliberate indifference( Mateyko v Felix, 9C1990,
924 F2d 824 at 826) and a state of mind analysis is not required
to constitute a violation of rights( Farmer v Brennan, 1994, 511
US 825 at 841 citing Daniel v Williams, 1986, 474 US 327 at 330.)

       It  is  well  established  that  wardens,  and  supervisory
employees, can be held liable for failing to properly and
adequately  train,  supervise,  monitor,  and  control  their
subordinates(  Williams  v  White,  8C1990,  897  F2d  942;
Finney v Hutto, 8C1978, 548 F2d 740 aff 437 US 678; Crooks v Nix,
8C1999, 872 F2d 800 citing Fruit v Norris, 8C1990, 905 F2d 1147
and Williams v Willits, 8C1988, 853 F2d 586 at 588.)

       In this case, the neither the warden, or the BOP, has a
training policy for the care and treatment of the convicted
mentally ill and mentally disabled.  There is a policy statement(
6000 et seq) in regard to the mentally ill " prisoner" but it
concerns procedures and not care and treatment.

       The warden, and the staff, treat all mentally ill and
mentally disable inmates as if the inmates were not mentally ill
or mentally disable.  They hold the mentally disabled and the
mentally ill accountable to the same high standards as a inmate
not mentally ill or mentally disabled( see section on failure to
state a claim.)

       The BOP makes rules and regulation for all of the federal
prisons and the warden makes rules and regulation for this prison.
Whenever the warden makes the rules, and see to it that the rules
are  followed,  then  the  mere  promulgation  of  those  rules
establishes a causal link, or connection, to a violation or injury
sufficiently to make the warden liable( DiMarzo v Cahill, 1C1978,
575 F2d 15.)

In this case, the indifference to the constitutional right of inmates is widespread and the complete indifference to the rightsd of the mentally ill and the mentally disabled permeates the institution. Officers and staff routinely abuse and mistreat the mentally ill and the mentally disabled as an established custom, policy, and practice.

A warden, and supervisory staff, are liable when their continued inactions to widspread abuses cause injury to inmates ( Slakan v Porter, 4C1984, 737 F2d 368 at 372-373) and for allowing the prison to be operated with indifference to the rights of the mentally ill inmates( Williams v White, 8C1990, 897 F2d 942 at 945.)

When a warden knows, or should know, that such widspread abuses and mistreatment of the mentally ill is so prevailent in the prison, then by his inaction to correct those abusive staff members makes him liable for damages( King v Hassie, 1C1983, 702 F2d 18) and the warden, and supervisory staff, need not be personally involved in the injury to be sued in court ( Fomias v Kelly, WDNY 1990, 739 FS 139 at 141)

Whenever a inmate has a complaint and filed thecomplaint in the administrative remedy process, the warden reviews the complaint personally at the BP-9 level and affixes his signature to the appeal.  So, he KNOWS of the widspread abuses yet he does not take any action to correct any abuse of the mentally ill.  By his indifference and inaction, the warden, and supervisory employees, acquiese to the violations of their subordinates and are just as liable as their subordinates.

Whenever a person sets into motion a chain of events which eventually causes a violation of rights, that person is liable for the injuries incurred even if the person did not participate in the injury or even had knowledge of the injury( Johnson v Duffy, 9C1978, 588 F2d 740 at 744; Arnold v IBM, 9C1981, 637 F2d at 1355; Cook v Housewright, DNev1985, 611 FS 828 at 830.) US v Paladino; TC2005, 401 F3d 471.

When a policy, custom, or practice is the moving force behind the violation of rights, then the supervising authority is liable

( <u>Dye v City of Warren</u>, NDOhio 2005, 367 FS2d 1175 )and a failure to train others is deliberate indifference( <u>City of Canton</u>, 489 US at 388; <u>Monnell</u>, 436 US at 690-691) and indifference has no immunity( <u>Bunyon v Burke County</u>, SD Ga 2004, 306 FS2d 1240.)

It is clear that the warden and the supervisors in this case have not established any kind of rule, policy, or procedure in the care and treatment of the unconvicted civilly committed mentally ill and mentally disabled and that they have not trained, supervised, monitored, or controled their subordinates in the treatment of the mentally ill and have not taken any action to stop the abuse and mistreatment of the mentally ill even though they have full knowledge of the abuses.

<u>VIOLATION OF PRISON LITIGATION REFORM ACT / THREE STRIKES / EXHAUSTION OF ADMINISTRATIVE REMEDIES:</u>

This defense raised by the respondents are not only frivolous, the defenses are ludricrous.

It is clear that a claim of a violation of the Prison Litigation Reform Act (PLRA) is an affirmative defense( <u>Ziemba v Wezier</u>, 2C2004, 366 F3d 161 at 163; <u>Lewis v Washington</u>, 7C2001, 300 F3d 829 at 834; <u>Wright v Hollingworth</u>, 5C2001, 260 F3d 357 at 358 and note 2.)

Phelps is a civil commitment ( <u>Phelps v US</u>, 9C1992, 955 F2d 1258.)

Civil commitments are not " prisoners" under the PLRA( <u>Perkins v Hendricks</u>, 8C2003, 340 F3d 582 at 583; <u>Page v Torrey</u>, 9C2000, 201 F3d 1136 at 1190; <u>Trouville v Venz</u>, 11C2002, 303 F3d 1256 at 1259-1260; <u>West v Macht</u>, EDWis 1997, 986 FS 1141) and those who are in civil detention are not " prisoners"( <u>Ojo v INS</u>, 5C1997, 106 F3d 680 at 682; <u>Agyeman v INS</u>, 9C2002, 296 F3d 871 at 886; <u>Grieg v Goord</u>, 2C1999, 169 F3d 165 at 167; <u>Chase v Perry</u>, DMd 2003, 286 FS2d 523 at 527; <u>DeBlasie v Gilmore</u>, 4C2003, 315 F3d 396 at 398-399.)

The PLRA applies only to convicted " prisoners " and to pre-trail detainees( <u>Kalinowski v Bond</u>, 8C2004, 358 F3d 978 and cases cited above.)

The PLRA does not apply to civil commitments( <u>King v Greenblatt</u>, DMass 1999, 53 FS2d 117 at 138; <u>Kolocotronics v Morgan</u>, 8C2001,247 F3d 726 at 728; <u>Page v Torrey</u>,201 F3d at 1190.)

A defense that one has failed to exhaust administrative remedies is an affiirmative defense ( Torrance v Pesanti, DConn2003, 239 F3d 230; Johnson v Tostman, 2C2004, 380 F3d 691 at 695.)

The requirement to exhaustɟ administrative remedies under the PLRA does not apply to Civil Commitments( Mojias v Johnson, 2C2003, 351 F3d 606 at 609; Casanova v Dubois, 1C2002, 289 F3d 142 at 147; Greig v Goord, 2C1999, 169 F3d 165 at 167) and Phelps is a Civil Commitment.

In light of the above decisions, the respondents' defense of failing to exhaust administrative remedies is a frivolous defense.

Phelps is challenging the very authority of the BOP and alleging that the BOP does not have lawful custody of him and that the employees do have have any lawful jurisdiction over him. In light of this, it would be futile to exhaust administrative remedies.

However, the claim of the respondents that Phelps has not exhausted administrative remedies is without merit.    Phelps stated in the complaint, very clearly, that he had exhausted administrative remedies ( page 3.) The BOP had all administrative remedies on computer files.  A quick review of the files would have revealed that Phelps has already exhausted his remedies.

In one administrative remedy, Phelps challenged all the rules, regualtions, and policy statements in the BOP and all of its facilities. ( Administrative remedy file number 267518 ).

In another administrative remedy, Phelps challenged all the acts, actions, inactions, and omissions of all the BOP employees, members, staff, and volunteers ( including those under contract with the BOP.( Administrative Remedy file number 281333.)

But even if Phelps had not exhausted administrative remedies, he would not be required to because administrative remedies are not required to be exhausted under a Bivens action( Lunsford v Jumad, op. cit.; US v Suttiswad, 9C1982, 696 F2d 644 citing Patsy v Board of Regeants of Florida, 1982, 457 US 496.)

The defense is completely without merit.

20

The respondents have ask the court to take judicial notice of certain cases that have been ruled on previously by other courts in which they ruled that the cases were " frivolous" and imposed a "strike" under the PLRA.

This court SHOULD take judicial notice of those cases and blush in shame of the incompetent decisions of some judges. First, a court can only rule the case is " frivolous " if the petitioner has proceeded under the informa pauperis statute. Phelps has never proceeded under that statute.  He has always paid his fees.

Unfortunately, some judges have ASSUMED that Phelps was proceeding in forma pauperis because Phelps was in federal custody and the court ASSUMED that Phelps was a convicted and sentenced prisoner and applied the PLRA.  It is absolutely totally erroneous and such incompetent decisions has long lasting lingering effects that cause irreparable injury.  A prime example is this case. Te respondents seized upon these clearly erroneous decisions in order to show authorative evidence of frivolity and strikes.

The PLRA does not apply to Phelps but REPEATEDLY previous court did apply the PLRA and based their decisions on the provisions of the PLRA.  That is plain error and.... damning error because future attorneys seized upon those erroneous decisions to prove a point.

That is not to say that judges are stupid, dumb, or incompetent. Judges are not Gods.  They are only human and they make mistakes in judgment, but with a judge, a mistake is eternally damning... especially if the decision is published. Who can unring a bell that has already been rung?  Who can silence a word that has already been spoken?

Even at this writing, Judge Patel is reviewing Petitions the Phelps has made and she REPEATEDLY rules as if Phelps is a convicted and sentenced prisoner and uses the PLRA as a basis for her decisions. That is not to say that she is incompetent.  It goes to show that even the courts are indifferent to the proper status of Phelps.. just as the BOP is indifferent.  Phelps is a unconvicted civilly committed mental patient, not a criminally convicted and sentenced "prisoner."

It is clear that the three strikes law under the PLRA does not apply to civil commitments( <u>Kalinoski v Bond</u>, 8C2004, 358 F2d 978) and Phelps is a civil commitment.

It is true that previous courts have imposed a " strike " against Phelps, but that " strike" was unlawful because Phelps is a civil commitment. And that is the problem.

The prior courts have REPEATEDLY made erroneous decisions based on the theory that Phelps is a convicted prisoner incarcerated in a federal prison. No judge...no magistrate has ever recognized Phelps as a unconvicted civilly committed mental patient. It would appear that judges are incapable of distinguishing the difference between criminal and civil, prisoner and patient, incarceration and hospitalization. Past courts, this court, and the respondents in this case has repeatedly referred to Phelps as a " prisoner" "incarcerated" in a federal prison or a federal facility.

The irony of it is... they are right. Phelps is a " prisoner" and he is"incarcerated" and he is being treated as if he were sentenced.. but those classifications are unlawful, because....THE BUREAU OF PRISONS DOES NOT HAVE LAWFUL CUSTODY OF HIM AND DOES NOT HAVE LAWFUL JURISDICTION. There are no provisions in the federal mental health laws that authorized, or allows for, federal confinement.

One court ruled that a federal prison was a " suitable facility" for Phelps when Phelps challenged the facility as being a prison and not a hospital. That was a dumb decision. It is not to say the judge is dumb... it was a dumb decision because the BOP does not have lawful custody of Phelps and if it does not have lawful custody, NO FACILITY in the BOP system can possibly be a suitable facility. Yet the decision of that judge is now etched in stone and anytime the government wishes to keep a civilly committed inmate in prions, they merely seize upon that erroneous decision to prove the point.

Phelps is committed under 18 USC 4243 and 18 USC 4247. The federal mental health laws allow Phelps to petition for release every 180 days... even raising the same issues against the same parties challenging the legality of confinement. 18 USC 4247(g) states clearly that the habeas corpus shall not be impaired for

the purpose of challenging the legality of confinement, yet Judge Patel( in the Northern District of California-who has jurisdiction over the original commitment) has repeated ruled on every habeas corpus petition that Phelps has submitted as a Successive Writ under 28 USC 2244. That is a dumb decision. The successive writ statute applies only to convicted and sentenced prisoners and Phelps is not a prisoner. Her decisions create the irrebuttable presumption that Phelps will never be released because every petition is considered a successive writ.

Clearly, §2244 is in direct conflict with 18 USC4247(g) and §2244 was never intended to be applied to those committed under 18 USC 4243 or 18 USC 4246, but Judge Patel does.

Once an erroneous decision is made, who can unmake it? Who can unring a bell that has already been rung? Who can silence a word that has already been spoken? Noone! It is impossible and the damage caused by erroneous decision are devastating to future court cases. Future lawyers seize upon erroneously dumb decisions as authorative evidence to prove a point.

These incidents are presented only to show the miscarriage of justice that Phelps has had to endure. As long as judges and magistrates treat Phelps as a convicted and sentenced prisoner incarcerated in a federal prison, their decisions will be erroneous. It is only when the mind of judges recognize that Phelps is a unconvicted civilly committed mental patient that they will rule correctly. The law requires Phelps to be hospitalized( Sherman). The supreme court has said that the federal government does not have a hospital(Foucha). At least 14 inferior courts have ruled that the federal medical centers are prisons( not hospitals) and the inmates confined therein are prisoners( not patients) suffering incarceration(not hospitalization). It is only when judges recognize the differences will Phelps receive true justice.

Even the court clerks contribute to the injustice. After every case number are the letters "PR" meaning "Prisoner." That places Phelps into a class of which he is not a member and he is erroneously treated as a member of that class.

There comes a time when a judge, or magistrate, must put aside the technicalities of the law and address the issue of a miscarriage of justice in order to promote justice and to meet the ends of justice..................and this is such a time.

23

## VIOLATION OF RULE 8

The respondents did not specifically state that Phelps violated Rule 8 of the Federal Rules of Civil Procedures. They did not mention the word " concise" but they did complaint that they were not able to comprehend the statement because what Phelps wrote was confusing to them and their brains were not organized enough to distinguish the facts and they complained that Phelps wrote so much, and it took so long in reading it, that their brain became numb and they could not understand what was written.

This is rather a subjective defense and frivolous.

They have made a bare bone statement without arguing any facts to support their argument and the courts have ruled that when bare bone conclusionary statements are made without substantial facts to support the conclusion, then the defenses is stricken( Heller Financial Inc v Mickley Powder Co, 7C1989, 883 F2d 1286.)

Phelps has stated several causes of action and he has made short and concise statements when needed and he has used more expository statement when it was required. He has used narration to explain events that has led to the cause of action and the courts have said that this is proper( Miles v Ertl Co,8C1983, 722 F2d 435.)

Rule 8 instructs the plaintiffs in a case to use as amny pages as necessary to state a claim because conclusionary statement cannot be accepted. Rule 8(e) even allows inconsistent confusing pleadings and frequently judges must use a judicial divining rod to discern what has been written, but nevertheless, the courts will accept such pleadings because Rule 8 requires courts to construe pro se pleading with tolerance and to be liberal and genorous in their construction( Haines v Kerner, 1972, 404 US 519 at 520; Kane v Winn, DMAss 2004, 319 FS2d 162 at 204; Prou v US, 1C1999, 199 F3d 37 at 42; Doivin v Black, 1C2000, 225 F3d 36 at 43.)

In addition Rule 8(f) and 8(e)(1) commands that all pleadings to be construed to do substantial justice and no technical form of pleading is required. That means Phelps can use whatever amount of word necessary to present a claim( In Re Blenett, 1981, 14 Bnkrptcy 840)

The court held in <u>Blenett</u> that it would be improper to dismiss a complaint on technicalities that raises cognizable claims.

Before the PLRA was enacred, the courts treated pro se complaints as if the complaints were pleaded properly( Kane at 219 ) and pro se litigants were given great latitude( Restucci v Spencer, D Mass 2003, 249 FS2d 33 at 40; Neverson v Bissonnette, DMass 2003, 242 FS2d 78 at 84) and the courts reviewed the merits of the case without requiring the exhaustion of administrative remedies. (Restucci at 41.)

However, after the PLRA was established, " prisoners " were held to a different standard, but in this case, the PLRA standards do not apply.

The defense that the complaint was confusing is frivolous.

## FAILURE TO STATE A CLAIM:

We finally arrive to the merits of the case and the respondents have alleged that Phelps has failed to state a claim.

The question is not whether the plaintiff will ultimate prevail but rather whether the plaintiff is entitled to offer evidence to support his claim( <u>DeJoy v Concast Cable Co</u>, DNJ 1996, 941 FS 468; <u>Kopf v Chloride Power Elect Co</u>, DNH 1995, 882 FS 1183; <u>Gardener v Black Mountain Forest Assn</u>, DNH 1995, 902 FS 14 )and upon a motion to dismiss for failing to state a claim, the court must take all the allegations in the complaint as true and draw all reasonable inference in favor of the plaintiff( <u>Vartarian    v    Monsanto    Co</u>, DMass 1995, 880 FS 63; <u>Rodowica v Mass Mut Life Ins Co,</u> DMass 1994, 857 FS 992; <u>Trimble v Androscoggins Valley Hosp</u>, DNH 1994, 847 FS 226; <u>Lindsay v Future Electronic Co</u>, DMass19__, 930 FS 677.)

In addition, the courts should not dismiss a complaint for failure to state a claim whenever it appears, on the merits of the case, that the plaintiff can recover on any viable theory( <u>Bergeson v Franchi</u>, D MAss 1992, 783 FS 713; <u>Fennen v Morgan,</u> DNJ 1991, 772 FS 59.)

In making a motion to dismiss for failing to state a claim, the respondents challenged the merits of the case, but the rule governing a motion to dismiss for failing to state a claim does not provide an avenue for challenging the merits of the case, rather, the rule is designed to raise legal challenges to the claims( <u>Freeport Transit Co v McNally</u>, DMe 2003, 239 FS2d 102.)

Phelps need not plead with articulated specific facts and evidence to state a claim.  In order to state a claim for relief, Phelps need only allege generalized statement of facts and if the  claims are legally sufficient, based upon any viable theory, the court must deny the motion to dismiss( <u>Budnick v Baybanks Inc.</u>, D Mass 1996, 921 FS 30 ) and if under any theory the complaint is sufficient to state a cause of action, the complaint cannot be dismissed( <u>Vartanian v Monsanto</u>, D Mass 1995, 880 FS 63 )and the courts must interpret the relevant facts in light most favorable to the plaintiff( <u>Flynn v Raython Co</u>, D Mass 1994, 868 FS 383.)

## THE RESPONDENTS HAVE NOT DENIED ANY ALLEGATION IN THE COMPLAINT!

Phelps alleges the following:

1.  The Bureau of Prisons does not have lawful custody of Phelps and the employees of the BOP do not have lawful jurisdiction or authority  over him because:

    (a)  18 USC 4243 requires a crime to have been committed before a citizen is under its jurisdiction and the government has admitted that Phelps did not commit a crime;

    (b)  Judge Patel, of the San Francisco Court, erroneously committed Phelps to the custody of the U. S. Bureau of Prisons instead of committing him to the custody of the U. S. Attorney General as mandated by 18 USC 4243;

    (c)  The U. S. Attorney General has misapplied the the provisions of 18 USC 4247(i) for over twenty years by confining Phelps in federal prison instead of hospitalizing Phelps in a mental hospital;

    (d)  The Bureau of Prisons know that it does not have lawful custody of Phelps but still imposed punitive incarceration upon him knowing that Phelps is a civil commitment;

26

(e) The staff, members, and employees of the BOP have
        treated Phelps as a convicted and sentenced prisoner
        in violation of <u>Jones v US</u>, 1983, 483 US 364 at 369.
        and members of the BOP have abused and mistreated
        Phelps for over twenty years.

2.  The BOP employees, staff, members, and volunteers know that
    Phelps is a Civil commitment and that the BOP does not have
    lawful custody of Phelps and that it is unlawful to treat
    Phelps as a convicted and sentenced prisoner but they do
    it anyway.

        (a) Phelps is subjected to the same conditions of
            confinement as sentenced prisoners and is treated
            as a convicted prisoner under 'he same rules,
            regulations, disciplines, and punishments as
            convicted and sentenced prisoners.

3.  Dr, Hass departed from the standards of his profession as
    a psychiatrist and labeled Phelps a mental patient with a
    major mental illnes: based solely upon the hearsay record of
    past doctors of 20 years ago.  He sent Phelps to a maximun
    security unit without any justification.

        a.    Phelps did not arrive at the institution from
              the free world.  He was transferred to FMC-
              Devens from a high functioning unit at Butner
              North Carolina:

        b. Phelps arrived at FMC Devens in November of 2004
           and Dr. Haas did not visit with Phelps until May
           of 2005 at which time he talked to Phelps for
           approximately 5 minutes.  He did not see Phelps
           again until July 24, 2005 and that meeting lasted
           three minutes.  Haas is completely indifferent
           toward Phelps and Phelps' status and condition.

4.  The court order that sent Phelps to Butner in 2002 stated
    that Phelps was committed for a <u>re-evaluation</u>( which is only
    75 days according to the terms of the statute) but BOP
    officials misterpreted the court order and construed it to
    mean a re-commitment for <u>TREATMENT</u>( but since 2002 they have
    not provided <u>ANY</u> form of treatment.) Phelps has not received
    ANY evaluation.

5.  The BOP officials have not provided individualized treatment as required by 18 USC 4081 and 18 USC 4 247(a).  Phelps is warehoused with no mental treatment whatsoever.

Warden Winn promulgates the rules and regulations for the institution and it is his responsibility to make sure the rules are followed. There is an established practice of disobedience to the rules by the staff without correction by Winn and the staff acts arbitrarily and capriciously in the care and treatment of inmates without correction by Winn of Bollinger ( the underboss of the prison)

6.  Warden Winn refused to allow Phelps to receive a publication from the outside because some of the articles in the publication expressed anti-government sentiments and expressed the opinion that states should separate themselves from the federal government because the federal government has become too coercive.

7.  Officer Potolicchio assaulted Phelps and filed a false and malicious disciplinary report on Phelps in retaliation for Phelps interrupting his flirtations with Nure Blazon.  The disciplinary committee stated that the disciplinary report was obviously false and they dismissed the charges and expunged the report from the record but Phelps was in disciplinary segregation for a week.

8.  Nurse Blazon knew the medical condition of Phelps and watched Potolicchio assault Phelps and did nothing to intervene or to intercede.

She not only condoned and approved the assault but aided in escorting Phelps to disciplinary segregation and conspired with Potolicchio to falsefy a disciplinary report.

9.  When Phelps filed a grievance complaint against Potolicchio and Blazon, other officers threatened Phelps in retaliation and said " quid pro quo" meaning tit for tat  or this for that  or you filed a complaint against us and we will file complaints against you.

10.  Officer Alba stated the same and filed a false disciplinary report against Phelps.  That too was recognized as patently false and was dismissed and expungedfrom the record.

11.  Phelps was harassed, abused, and mistreated because of his complaint against the staff for harassing him and abusing him. The incidents are numerous and only a few is mentined here:

a.   The mailroom staff refused to send out letters to Phelps family members because " the envelopes contained legal documents as well as a personal letter." They refused twice.   Phelps complained to warden winn and he was indifferent.   He complained to the mailroom supervisor and the supervision did nothing about it.   Phelps tried to explain to them that it was not the content of the mail that determined if the letter was general correspondence( Personal) or special correspondence( legal and others ) but rather it was to who\the envelope was addressed that determined the classification. They were completely indifferent. Because Phelps complained about the mail room staff, the mailroom staff retaliated against him.

They destroyed his incoming and outgoing mail, they delayed his legal and personal mail( it takes 10 - 21 days for Phelps to receive mail... even if an attorney sends the mail by overnight express.)

b.   The other respondents were abusive to Phelps and departed from the standards of their professions as mental health workers.

c.   Staff would turn on the lights to Phelps' room at night after he was asleep to awaken him and would leave it on knowing that it upset Phelps.   One officer ( Martinez ) turned on the light and when Phelps complained, Martinez said " say please turn off the light.   If you don't say please I leave it on."   Such conduct is contertherapeutic.   Many officer used the same thing to frustrate Phelps when they discovered how much it upset him( The harassment is still continuing.)   The staff would walk by his room and pound and kick on the door to awaken him and then rush away laughing when Phelps would yell at them to stop harassing him.

d.   Staff memberParrot and Laver did the same. When Phelps would go to the law library to study, the inmate clerks would play a television set( which they stole from the leisure library) or a radio( which they stole from another department) so loudly that no inmate could concentrate on their studies.   There are signs posted on every wall " no noise...incident reports will be written." Phelps complained and he was retaliated against because ofthe complaint.

29

One day Phelps complained about the noise. Laver walked in and stood under a " no noise " sign and told the clerks to turn up the music because she liked it. It was " Rap" music. Then she walked out of the library so she would not hear it. Inmates closed their book and sat at the tables silently, fuming, until the announcement came on the loudspeaker that inmates were free to move about the institution. They left rather than be subjected to the noise at the apporval of Laver and Parrot.

Parrot and Laver changed the routine schedule for using typewriters. Instead of " first come first serve," the new rule was that a inmate had to reserve a typewriter one day in advance. When Phelps aked the clerk to reserve a typewriter for him for the next evening, the clerk refused saying that Parrot had ordered him not to. Phelps complained to Parrot and she said" well...your'e using it today so you can't use it tomorrow." Then, as they were talking, another inmate left his typing table to go back to his unit and ask the clerk to reserve him a typewriter for the next evening. The clerk did. When Phelps pointed it out to Parrot, she said"that is him and you are you."

When the inmate workers realized that the staff was harassing Phelps, they joined in on the harassment.

The retaliation became widespread and even officer who never met Phelps would start harassing him because it was approved by tacit conduct by the warden, Captain Bollinger, and other supervisory staff.

One must remember that Phelps is not a normal convicted prisoner. He is a civilly committed mental patient and such conduct and behavior of the staff and employees against a mentally ill patient is outrageous conduct. The respondents might argue that such actions are deminimus because they do it all the time with other inmates and the regulation is that civil commitments will be treated as convicted prisoners are treated.

e.    The receiving and Discharge officers seized Christian Bible lessons from Phelps and destroyed then without any due process.

f.    Counselor Bonnila wrote a memo and posted it saying that he would punish everyone for the infraction of one inmate.

(f)   The business office refused to take money from the account of Phelps to send to the court for filing fees without a court order directing them to do so.   Phelps was unable to understand why until he learned of the nepotism in the BOP system.   In some institutions whole families are working at the same facility and when a inmate complains against one member of the family, all the other members retaliate against the inmate.( This court issued the order.)

Because of the refusal, courts have dismissed cases of Phelps for failing to pay filing fees, yet it is because of the harassment of the BOP employees in refusing to take money from his account to pay the fees that the fees are not paid.

(g)   The rules require a inmate to submit a BP-9 administrative remedy withing 20 days of the incident.   Although there is no written rule that requires inmates to obtain a " BP-8" before obtaining a BP-9, staff members require it just to burden the inmate and to create obstacles for the inmate to overcome.   Some staff members even require the inmate to submit a written request to obtain the BP-8( which is called a BP 7 1/2.) There is no written rule for that either and it is left to the arbitrary and capricious decision of the individual staff member.

Phelps submitted BP-8's to Counselor Bonilla in November and December of 2004 and in January and February of 2005 and Bonilla still has not responded to the BP-8's.   Yet he must respond before Phelps can obtain a BP-9....but the BP-9 must be obtained within 20 days of the incident.

It should be noted here that the title " counselor " is a misnomer.   It is a title given to a paper pushing clerk.   He does not " counsel" inmates.   He distributes forms, arranges Phone calls, distribute stamps, and other menial work.

(h)   Dr Sonnega( a psychiatrist ) made a false and malicious disciplinary report against Phelps.   Sonnega placed Phelps on the " call out." The " call out " is a posted notice of inmates to report to a certain place at a certain time.

Phelps answered the call out and spoke to Dr. Sonnega and

31

and Dr. Sonnega told Phelps that the call out was for group therapy. Phelps ask if he was required to participate.   Sonnega said " No."  Phelps said that he would not participate because he had to do legal research in preparation for court.   Sonnega told phelps that he must sign a refusal form.  Phelps signed a refusal form and Sonnega made a false disiplinary report against Phelps for " refusing to answer a call out."

Phelps had to go before a Unit Disciplinary Committee(UDC). The rules of the prison ( which does not apply to Phelps ) require three staff members to form the committee.  " Counselor " bonilla was the only member of the committee.

Bonilla refused to allow Phelps to testify in his own defense; he refused to allow Phelps to submit a written statement in his defense; he refused to allow Phelps to call witnesses in his defense; and de denied Phelps ALL due process protections and found  Phelps  guilty of not answering a call out.   Phelps attempted to explain that the refusal form was prima facie evidence that he DID answer the call out because he could not sign the form unless Dr. Sonnega had given it to him( and signed it as a witness) and Dr. Sonnega cound not have given it to him unless he had answered the call out.  Bonilla was completely indifferent and sentenced Phelps to disciplinary action under BOP rules that were established for only convicted and sentenced prisoners.

From the first day that Bonilla became the mental health "counselor" he displayed hostility toward Phelps.  Phelps ask why and Bonilla remarked that he didn't like inmates who made complaints against other staff members, so... all his actions are taken in retaliation for Phelps filing complaints.

(i)   Laver ( education department ) is always ordering Phelps to remove his baseball cap while in the library yet she allows her clerks to wear caps and she allows Islamic inmated to wear head coverings, and Rastafarians to wear oversized knit caps. She states that the prohibition is for " security " reasons because inmates could conceal weapons in the caps or headwear. YET... she allows Phelps, and other inmates, to wear the caps in the evenings, on week-ends, and holidays.  Her demands are illogical, irrational, arbitrary and capricious.

Lavers' attitude is the same attitude that permeated the institution. (j)  Phelps has had a heart attach an suffers from angina.  He has had two strokes and he has a spinal injury.  It is well documented in his medical records.

When Phelps arrived at the institution he requested a single room because of his disabilities and because of his status as a mental patient.  It is well established, by the courts, that the mentally ill exhibit unpredictable spontaneous eruptions of violence and because of that the mentally ill should not be double celled with others.  It is true.  Phelps had a friend by the name of Robert Cochran.  Staff members moved another mentally ill inmate in with Cochran without any prior determination of compatibility or anything else.  While Cochran slept, the other inmate hallucinated and thought Robert was talking about him and murdered Robert.

In another case, a inmate, who is on the same unit as Phelps, was paranoid and thought everyone was out to get him so he heated oil  and water in the microwave to boiling temperature and without any warning threw the liquid in the face of a inmate and a doctor by which they suffered second and third degree burns.  The doctor was absent from work for three weeks.

Bonilla transferred Phelps from room to room and maliciously assigned him to " upper bunk" status KNOWING Phelps' physical disabilities and Phelps'advanced age( Phelps is almost 72 at this writing.) Phelps is still on upper bunk status now because of Bonilla.

(k)  Phelps was transferred from Butner North Carolina to a more onerous facility at Devens without any given reason or justification. When Phelps demanded to know why, he was told that the reason given was " continued treatment."  Phelps filed a freedom of information request to obtain the information but the administration refused to provide the information.  Phelps has concluded that it was in retaliation for filing a complaint in court at Raleigh and because he requested to form a " inmate grievance committee " to allow inmates to present grievances to a inmate committee.

(l)  A Lieutenant confiscated some items that Phelps had purchased in the prison commissary and the lieutenant destroyed the items

33

without giving Phelps any due process whatsoever.

It should be noted here that the inability to sleep is a major disability(<u>Martin v AT & T</u>, DColo 2004, 331 FS2d 1279). When a officer engages in deliberate malicious activity to deprive phelps of sleep, he is causing Phelps to suffer a disability. To cause that disability, the officer must assault Phelps, therefore the acts of depriving Phelps of sleep and rest was not only counter therapeutic but it was also an assault.

The rules ond regulation of the prisons regarding employees conduct and responsibilities, require emplyees to wear identification plates on the outer garments so that anyone can identify them. The ataff at Devens refuse to wear ID plates and when any inmate ask for them to identify themselves, they refuse. In this way. the inmate can only file complaint about " unknown parties " and the courts frown on such complaints. Many staff members have refused to disclose their identities after a incident of abuse and mistreatment of Phelps.

(k) The administration discriminates against those inmates who are mentally ill or mentally disabled and expecially the unconvicted civil commitment and the administration makes no allowances for those mental disabilities or mental illnesses.

For example, the Department of Safety and Sanitation, in the facility, conducts a weekly sanitation inspection of all the housing units and rates the units on how clean the units are.

The highest scores are released to activities and meals first and the units are rotated by the level of scores. For example a unit with a 100 % score would be released from the housing unit first. A unit with a score of 99.99% would be release next, and so on.

This allows the units the privilege of going first to the commissary to purchase personal items and to avoid waiting in long lines. It allows inmates to go to the leisure library first to obtain a place to watch a video tape of a movie. There are only six video monitors for over 1000 inmates. It also allows inmates, who are first on sanitation, to go to the law library and be first to reserve a typewriter. So there is some purpose in the scoring of sanitation.

34

However, the inspectors do not allow for the mental disabilities of the mentally ill. Some inmates are so confused that they get lost returning from the dining room. Some are so incompetent and so gravely disabled ( under the terms of Washington v Harper, 1990, 494 US 210 ) that they cannot perform the daily routine basic hygiene care for themselves. Some simply do not bathe and some never change their clothing unless someone tells them that they stink. Some are so overly medicated with antipsychotic medication that they sleep most of the day and do not get out of bed except to stand up for the mandatory 4 p.m. count.

In other federal medical centers, the administration employs convicted and sentenced inmates who are not mentally ill to go to the mental health units to clean the units and rooms, but not at this facility. At other medical centers the administration assigns a specific staff member ( usually the recreation therapist because he is the one with the most free time ) to inspect each unit on a daily basis about 9 a.m.

The staff member does not say anything to the inmates. He does not tell them to take a shower or to get up and make their beds or anything else. He has a check list and he places a check mark on the page with the inmates name of the defenciencies of the room and the appearance of the inmate and whether he is sleeping or not.

After a week, the team members of the inmate review the inspection report of the staff member. Those inmates who cannot maintain themselves or their room are moved to a lower functioning unit. If the inmate cannot maintain himself there, he is moved to a lower functioning unit until he is placed into a unit where he can function at his maximum capabilities. One unit is a high function unit. This is the highest and freest unit. These inmates need no supervision or direction. These inmates do not require other inmates to clean their unit. These inmates are eligible for release.

But this is not the way it is at this facility. In this facility none of the staff members take any interest in the

inmates. Inmates are left to do for themselves and are punished if they are incapable of doing what is required.

The American with Disabilities Act require the administration to make accommodations for the mentally disabled. The administration is to make allowances for the mentally disabled. It does not.

There are other incidents that caused Phelps to suffer grevious mental suffering in which he had to obtain medical treatment because of the spiteful conduct of the staff.

As a final remark, Phelps is making a statement that a reply to this response to the Respondents Motion to Dismiss would be improper. Rule 7 of the Federal Rules of Civil Procedures clearly state that there will be a complaint, an answer, and a reply to the answer and no other pleading are accepted. The allow the respondents to reply to this response is to allow the respondents to make a successive Motion to Dismiss or a Second Motion to Dismiss and that is absolutely improper.

For the reasons stated above, the Motion to dismiss must be DENIED.

DATE: 7 / 25/ 2005                                        _____ In Pro Se
                                          COY PHELPS   78872-011
                                          FMC-DEVENS
                                          P. O. BOx  879
                                          AYER MASSACHUSETTS
                                               01432

## CERTIFICATION

I, COY PHELPS, certify under penalty of perjury, pursuant to 28 USC 1746, that I am the Petitioner in this action and that all the statements made herein are made by me and that all the statements made herein are true and correct according to my best knowledge and belief.

DATE: 7 / 25/ 2005                                        _____ In Pro Se
                                          COY PHELPS   78872-011
                                          FMC-DEVENS
                                          P. O. BOX 879
                                          AYER, MASSACHUSETTS   01432

## CERTIFICATE OF SERVICE

I, COY PHELPS, certify under penalty of perjury, pursuant to
28 USC 1746, that I placed a copy of this action into separate
correctly addressed envelopes,affixed with sufficient and proper
first class U. S. Postage,and deposited the envelope(s) into
the prison mail-box,on the date indicated below,to be delivered
to:

1.  Damian W. Wilmot, AUSA, U. S. Attorneys Office, Suite 9200
        1 Courthouse Way, Boston, Massachusetts  02210

DATE: 7/25/ 2005

_____ In Pro Se
COY PHELPS   78872-011
FMC - DEVENS
P. O. BOX   879
AYER, MASSACHUSETTS
                01432

37