UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40003-GAO

COY PHELPS,
Plaintiff

v.

DAVID WINN, MIKE BOLLINGER, JAMES DOLD, S. THOMPSON, S. HARVEY, B.
POTOLICCHIO, J. DAVIS, J. FLETCHER, W. BLAZON,
H. HAAS, K. LEONARD, and J. SONNEGA,
Defendants

OPINION AND ORDER
September 27, 2007

O'TOOLE, D.J.

I.  **Introduction**

The plaintiff, Coy Phelps, is confined at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). In 1986 he was found not guilty only by reason of insanity in the United States District Court for the Northern District of California on charges of possessing, manufacturing, and placing pipe bombs at five San Francisco locations, in violation of 26 U.S.C. § 5861(d) and (f), and 18 U.S.C. § 844(f) and (I). Subsequently, Phelps was civilly committed to the custody of the Attorney General following a hearing pursuant to 18 U.S.C. §§ 4243 and 4247. Since that time, Phelps has been housed at and transferred between the FMCs in Springfield, Missouri; Rochester, Minnesota; and Butner, North Carolina, until his most recent transfer to FMC Devens in November, 2004.

Phelps filed a complaint on January 5, 2005, which he later amended, and sets out eighteen separate "Bivens claims" against twelve defendants who are employed at FMC Devens. See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). The defendants are former Warden David Winn, Captain Michael Bollinger, Director of Nursing James Dodd, Chief of Psychiatry Dr. Sally Thompson, Chief of Mental Health Dr. Paul Harvey, Corrections Officer Bradley Potolicchio, Registered Nurses John Davis and Wendy Blazon, Staff Psychiatrist Dr. Jim Fletcher, Staff Psychologists Dr. Howard Haas and Dr. Jeffrey Sonnega, and Corrections Counselor Kevin Leonard. The defendants have moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

As a threshold matter, the defendants place great weight on the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, arguing that its three-strikes provision and exhaustion requirement prevent this Court from hearing the merits of Phelps' claim. However, Phelps, as a civilly committed person pursuant to 18 U.S.C. § 4243, does not meet the PLRA's definition of "prisoner," which "means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." See 42 U.S.C. § 1997e(h); Page v. Torrey, 201 F.3d 1136, 1139-40 (9th Cir. 2000). Accordingly, the PLRA does not apply to Phelps, and this Court may entertain the merits of his claims.

## II.   Phelps' Eighteen Causes of Action

Phelps sets out eighteen purported causes of action in his Amended Complaint. Six of these claims fail to state a claim upon which relief can be granted because they fall completely under the umbrella of Phelps' meritless and precluded contention that as a civilly committed person he is not lawfully in the custody of the Federal Bureau of Prisons ("BOP") under 18

U.S.C. § 4243 because he is not a "prisoner." In six claims, Phelps fails to allege a constitutional violation sufficient to state a claim under Bivens or fails to state a claim because of the existence of an adequate post-deprivation remedy. Three of his claims fail to plead specific facts and only make conclusory allegations of potentially actionable claims. Finally, three of Phelps' claims are able, at least partially, to state a claim upon which relief may be granted so as to survive the defendants' motion to dismiss.

    A.    Phelps' claims deriving from his argument that the BOP lacks lawful custody

Phelps' first cause of action alleges that former Warden David Winn failed to adopt proper rules special to civilly committed persons, and having not made or enforced special rules for Phelps thereby condoned and approved unlawful activities of subordinates, and failed to properly train and supervise his subordinates. (Am. Compl. at 18-19.) The second cause of action alleges that defendants Bollinger, Dold, Thompson and Harvey failed to properly train and supervise their subordinates in the care and treatment of the mentally ill, more specifically in distinguishing the difference between civilly committed persons and convicted prisoners. (Am. Compl. at 19.) The twelfth cause of action alleges that Phelps does not come under the jurisdiction of § 4243 because the statute requires an underlying crime and the government has admitted that he committed no crime. (Am. Compl. at 31.) The thirteenth cause of action alleges that the Attorney General, who is not named as a defendant, abused his discretion by not putting Phelps in a hospital, as opposed to a prison. (Am. Compl. at 32.) The fourteenth cause of action alleges that the BOP does not have lawful custody of Phelps or authority to hold him, and that Phelps therefore has a right to refuse treatment. (Am. Compl. at 32.) Lastly, the seventeenth

cause of action claims that Phelps should not be subject to the same impositions on his privacy as sentenced prisoners. (Am. Compl. at 35.)

Phelps' claim that he is not lawfully in custody of the BOP lacks merit and is no basis for relief under Bivens. Phelps was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4243, which requires that the Attorney General, if unable to cause a State to assume responsibility, must hospitalize a civilly committed person such as Phelps for treatment in a "suitable facility." A "suitable facility" is defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). Phelps' objections are categorical, not related to any circumstances specific to FMC Devens, and therefore he is precluded from raising this issue because he has already unsuccessfully litigated this issue in other federal courts. See Lynch v. Merrell-National Lab.'s, 830 F.2d 1190, 1192 (1st Cir. 1987) (noting that "the traditional requirement of mutuality has been eliminated to permit a defendant to invoke estoppel against a plaintiff who lost on the same issue to an earlier defendant."); Phelps v. United States Bureau of Prisons, 62 F.3d 1020 (8th Cir. 1995) (holding that a federal medical center is a "suitable facility" for Phelps within the meaning of 18 U.S.C. 4243 and 4247); Phelps v, United States, 831 F.2d 897 (9th Cir. 1987) (holding that § 4243 is not unconstitutionally vague and overbroad).

Even were Phelps not precluded from raising this issue, the result reached on the merits, or lack thereof, by prior courts was correct, as a BOP facility is not categorically unsuitable simply because it also, and even primarily, houses convicted prisoners. See Phelps, 62 F.3d at 1023. Accordingly, as to the first, second, twelfth, thirteenth, fourteenth, and seventeenth causes of action, Phelps has failed to state a claim upon which relief may be granted according to Fed.

4

R. Civ. P. 12(b)(6). Other claims made by Phelps include, in part, this jurisdictional argument, and to that extent fail to state a claim upon which relief can be granted.

      B.    <u>Phelps' claims that fail to allege a constitutional violation and/or fail because the Federal Tort Claims Act provides an adequate post-deprivation remedy</u>

Phelps' fourth cause of action alleges that defendant Fletcher violated BOP rules and failed to exercise professional judgment in threatening to put Phelps in disciplinary segregation for disagreeing with him. (Am. Compl. at 20.) Phelps' fifth cause of action alleges that defendant Davis violated BOP rules by screaming and yelling at Phelps and putting him in fear of his safety "in clear absence of jurisdiction." (Am. Compl. at 21.) Phelps' seventh cause of action alleges that defendant Blazon conspired with Potolicchio to make false charges against Phelps and violated a duty imposed by BOP rules to intervene to prevent another officer from violating the rights of an inmate. (Am. Compl. at 24-25.) Phelps' eighth cause of action alleges that defendant Leonard failed to assign Phelps to a single room in violation of 18 U.S.C § 4081, requiring the BOP to make "individualized" discipline, care and treatment. (Am. Compl. at 25.) Phelps' eleventh cause of action states that defendant Sonnega would not permit Phelps to opt out of group therapy unless he signed a form to that effect. (Am. Compl. at 30.) There was a disagreement and Sonnega wrote a disciplinary report. Phelps was upset and could not eat, and sought medical attention from a nurse. (Am. Compl. at 31.) Phelps' eighteenth cause of action contains two claims: (1) that he was transferred from North Carolina to Massachusetts in violation of Rule 23 of the Federal Rules of Appellate Procedure; and (2) that he filed a request pursuant to the Freedom of Information Act with Winn, which Winn ignored. (Am. Compl. at 35-36.)

5

There are no constitutional violations alleged in any of these claims, and since Bivens creates a cause of action only for constitutional violations, Phelps fails to state a claim upon which relief can be granted. See Bivens, 403 U.S. at 389; Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). To the extent that Phelps may allege a procedural due process violation, these allegations are insufficient to raise a procedural due process claim because there are adequate post-deprivation remedies—either the BOP's administrative remedy process, 28 C.F.R. § 542, or the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. See Hudson v. Palmer, 468 U.S. 517, 533 (1984).

    C.    Phelps' claims that fail to plead sufficient facts

Phelps' ninth cause of action alleges that under the rules established by Winn, he has been denied "meaningful access to the courts" by reason of restrictions on his ability to go to the law library, make copies of documents, and have assistance of other inmates. (Am. Compl. at 27.) Phelps has not pled sufficient facts to sustain a cause of action for denial of access to the courts. The right for an inmate to have access to the courts is not absolute, and reasonable restrictions may be placed on it to facilitate penal administration. An inmate alleging denial of access to the courts must show that he has suffered an actual injury. See Lewis v. Casey, 518 U.S. 343, 349-352 (1996). There is "no freestanding right to a law library or legal assistance," and so for Phelps to state a claim he would have to "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." See id. at 351. Accordingly, Phelps' ninth cause of action fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Phelps' tenth cause of action complains about new procedures either governing an inmate's ability to access his funds generally, or to pay court filing fees in particular, that were adopted by Winn and put into practice by "Susan" in the business office. (Am. Compl. at 29-30.) No actual harm is alleged by Phelps, and accordingly he fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

Phelps' fifteenth cause of action alleges that the BOP and its facilities have violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, and the Restatement of Bill of Rights for Mental Health Patients, 42 U.S.C. 10841, by not making individualized treatment decisions because BOP's "accommodations are for convicted and sentenced prisoners not for the mentally disabled," and "[s]taff is unqualified in the care of the elderly and the mentally disabled patient . . . ." (Am. Compl. at 33.) Phelps further alleges that he "has been abused, mistreated, assaulted, threatened, tortured, and terrorized by U.S. Bureau of Prisons employees in his 20 years of incarceration." (Am. Compl. at 33.) Phelps goes on to describe some of these abuses, but does not say by whom they were committed.

Inasmuch as this cause of action is another iteration of the recurring claim by Phelps that the BOP lacks lawful custody of him, this fails to state a claim upon which relief can be granted. Beyond that, Phelps' claim may be that the BOP acts only categorically, without giving particularized attention to individual inmates' needs. The BOP undoubtedly has an obligation to make individualized treatment decisions under 18 U.S.C § 4081, and the failure to do this could be actionable. However, Phelps has not made any specific factual allegations in this regard, and the mere conclusory assertion that "[t]hey do not provide individualized care or treatment. . ." is not sufficient to survive a motion to dismiss. Phelps' allegations of abuse over 20 years could be

7

sufficient if they were directed at the present defendants, but there is no identification of the persons responsible for the allegedly unlawful acts.

   E. <u>Phelps' claims that can survive the motion to dismiss</u>

Phelps' third cause of action alleges that defendant Haas, a doctor, acted without jurisdiction in confining Phelps in violation of the 4th, 5th, 8th and 9th Amendments, as well as the ADA and the BOP's rules. (Am. Compl. at 19-20.) In addition, Phelps alleges that Dr. Haas caused Phelps to be housed in a locked room without exercising his independent professional judgment as required by <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982). <u>Youngberg</u> held that the government had a "duty to provide adequate food, shelter, clothing, and medical care" to one institutionalized by the government, and that there is a "constitutionally protected interest in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." <u>Id.</u> at 324. The government has an obligation to provide medical care for inmates, and failure to do so, if it rises to the level of deliberate indifference to serious medical needs, constitutes a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). Accordingly, Phelps' third cause of action states a claim upon which relief may be granted under <u>Bivens</u> as to the alleged Fifth and Eighth Amendment violations.

Phelps' sixth cause of action alleges that defendant Potolicchio "assaulted" Phelps, "in clear absence of jurisdiction," and made a false disciplinary report causing Phelps to be placed on disciplinary detention. (Am. Compl. 21-24.) As already discussed, to the extent that Phelps rehashes his jurisdictional argument and complains about a false disciplinary report, Phelps fails to state a claim upon which relief can be granted. However, reading Phelps' allegations liberally

8

because he is pro se, Phelps' allegations of "assault" are sufficient to state a claim upon which relief can be granted as to an assault and/or a battery. Phelps alleges that Potolicchio ordered Phelps to stand against the wall with his feet apart and, when not satisfied with the distance between Phelps' feet nor with Phelps' response that it was as far as he could go because of a spinal injury, screamed at Phelps and "simultaneously kicked the right leg of Phelps, knocking his leg about 6 inches further apart." (Am. Compl. at 23). Phelps alleges that this caused him immediate and severe pain in his back, spine, and legs, and that he was not actually searched while against the wall, as "the action was just spiteful punishment." Id.

Phelps' sixteenth cause of action complains that when he was transferred from FMC Butner to FMC Devens, he was not allowed to have some items of personal property, including "bible lessons" that he had been allowed to have at Butner. (Am. Compl. at 34.) Phelps objects to this based on his argument that he is not lawfully in BOP custody, and therefore these conditions cannot apply to him. As previously discussed, this aspect of Phelps' claim fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Phelps further asserts that prison rules interfere with his personal religious beliefs, and that "[t]he prison allows the anti white teachings of Islam, Moorish Science Temple, Black Hebrew Nationalists, Rastafarians, etc., but will not allow teachings of white racial purity." (Am. Compl. at 34.) This aspect of Phelps' claim may be actionable to the extent that it can be understood to allege that FMC Devens property rules favor and disfavor different religious beliefs based on their content. Accordingly, Phelps has stated a claim under Bivens that his First Amendment rights are violated by this alleged policy, and the (now former) Warden Winn, as the maker of these alleged rules, is the defendant in this cause of action.

9

**III.    Conclusion**

For the foregoing reasons, the defendants' motion to dismiss (dkt. no. 15) is GRANTED with respect to all of Phelps' asserted causes of action except for the third, sixth, and sixteenth causes of action. As to Phelps' Youngberg claim against Dr. Haas in his third cause of action, his sixth cause of action alleging an "assault" by Potolicchio, and his claim that the Warden's property rules violate Phelps' First Amendment rights in his sixteenth cause of action, the defendants' motion to dismiss is DENIED. Accordingly, the only remaining defendants are Dr. Haas, Potolicchio and Winn. Since Phelps' only other case that is currently past the motion to dismiss stage (Civil Action No. 06-40090-GAO) involves different defendants and different claims, both parties' motions to consolidate cases (dkt. nos. 25 and 27) are DENIED without prejudice.

It is SO ORDERED.

 /s/ George A. O'Toole, Jr.
United States District Judge